The STATE of Wyoming, Petitioner,

v.

Tammy EVANS, Respondent.

No. 96–104.

Supreme Court of Wyoming.

Aug. 19, 1997.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Sr. Assistant Attorney General; Thomas L. Lee, Special Assistant Attorney General; Mary Beth Wolff, Special Assistant Attorney General, for Petitioner.

Sylvia Lee Hackl, State Public Defender; Peter H. Froelicher, Assistant Public Defender, for Respondent.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Petitioner State of Wyoming seeks review of the district court's suppression of the admissions of an accused. Following an evidentiary hearing on respondent Tammy Evans' motion to suppress a statement, the district court ruled that the prosecution had not met its burden of proof that the statement was given voluntarily and granted the suppression motion.

We affirm.

The State presents this statement of the issue:

Did the district court judge misapply the law when he found that:

(1) the Respondent, Mrs. Evans, knowingly, voluntarily and intelligently waived her rights under *Miranda;*

(2) the interviewing officer, Officer Jane Everett, did not coerce Mrs. Evans' statements; and

(3) Mrs. Evans voluntarily initiated the interview during which she made inculpatory statements;

Yet ruled that, under the totality of the circumstances, the State failed to prove the statements were made voluntarily?

Evans presents these issues for our review:

I. Is the issue in this case one which is reviewable under Rule 13.02, W.R.A.P.?

II. Did the trial court abuse its discretion in finding that the Petitioner had failed to prove by a preponderance of the evidence that the Respondent's statement to law enforcement was voluntary and therefore inadmissible at trial?

## FACTS

Eighteen-year-old Tammy Evans took her two and one-half month old son to the emergency room for medical treatment of symptoms not otherwise related to this case. X-rays were taken and two fractures of the baby's ribs in different stages of healing were discovered. In the opinion of an examining physician, one of the fractures was seven to ten days old and the other older but not yet healed. After these discoveries, Evans was asked to come to the Cheyenne Police Department to be interviewed by police officer Jane Everett and Patricia Frank, a social worker from the Department of Family Services. Evans and her husband came to the police department late that same evening and were interviewed separately.

Before the interview began, Evans was properly advised of her rights to counsel and to remain silent; she signed a written acknowledgment and waiver of those rights. A one-hour and twelve minute interview ensued but, because the recording device was inoperative for unexplained reasons, only the final thirty minutes of this interview was recorded. The district court accepted the police officer's statement that the failure to record the entire interview was inadvertent. Evans described the first interrogation as "nasty" and Officer Everett admitted that this interrogation was "aggressive."

Evans' husband was then interviewed for about thirty minutes. After her husband's interview, at which she was not present, Evans discovered that an individual not connected with the case had been mentioned in his interview. She decided that she needed to clarify this one aspect. Officer Everett took this opportunity to again question Evans without another advisement of Evans' rights in a second interview about the baby's inju-

ries. None of this second, shorter interview was recorded, but, according to Officer Everett, at or near its completion, Evans admitted that she had squeezed the baby, squeezed him too hard, and knew at the time that she had hurt him. Evans denied saying "squeezed" or admitting "that she had hurt him." Immediately after the second interview, Evans gave a short written statement, saying:

> I picked him up trying to comfort him. I tried to hug him. But after I did, I regreted (sic) it. I knew I shouldn't have huged (sic) him. That was it. I was fine after that. I regreted (sic) it because I knew it could have hurt him. I had hugged him to (sic) hard.

Evans was charged with felony child abuse and filed motions to have her oral and written statements suppressed.

At the suppression hearing, the prosecutor showed that at the beginning of the first interview Evans believed she was potentially a suspect in the injury of her son, she understood her *Miranda* rights, and she voluntarily waived those rights and consented to the interview. Evans testified that she had graduated from high school with a "B" average and was employed by Magic City Industries as a living skills trainer, helping to educate the physically and mentally disabled. Officer Everett testified that she did become aggressive and that she had raised her voice when Evans was evasive about her past. It was Officer Everett's opinion that her close proximity to the recorder's microphone caused it to sound as if she had been yelling. She also described Evans as generally calm during the interviews, although she did get upset and cry. Officer Everett reported that the second interview was much calmer.

Evans' testimony at the suppression hearing described a number of intimidating, threatening, and accusatory statements made by Officer Everett during the interview, some of which were recorded. The recording reveals that Officer Everett yelled and used profanity and promised counseling and help for Evans. Evans points to the following portions of the recording as illustrative of the interrogation method employed by Officer Everett:

"Your little baby is getting hurt and that pisses me off."

\* \* \* \* \*

"Do you love your son ... do you ever want to see him again?"

\* \* \* \* \*

"Was it an accident, did you get stressed out, my god, that is understandable."

\* \* \* \* \*

"Tammy, everybody gets stressed, people lose control and it's okay."

\* \* \* \* \*

"It is okay because Patricia [Frank] is here, and Patricia [Frank] is here to help you."

\* \* \* \* \*

"You're a pretty damn good mother, aren't you? You're almost perfect, Tammy, you are so close it is sickening ... nobody is that perfect, nobody ... Now all of a sudden you are Queen Elizabeth, you are the perfect mother, come on, Tammy.

\* \* \* \* \*

"You know what, if you sat here and you said, 'I fucked up, I couldn't take it anymore, I got scared, I screwed up,' anybody in this city would be willing to help you, but if I have to dig and dig and dig and finally I find out who did it, and gosh dang, Tammy got carried away, do you think people are going to try to help you."

The defense elicited numerous concessions from Officer Everett that during the first interview she had made statements to Evans which sounded threatening, she had yelled accusations at Evans, she had suggested that Evans' only punishment would be parenting classes and counseling, and Evans cried at times during the interview. The officer also admitted that she did accuse Evans of lying, had raised her voice, interrupted Evans when she was trying to answer questions,

brought up that Evans was a victim of abuse, and told Evans that her family thought she was a failure for getting pregnant. Officer Everett answered several questions directly pertaining to threats, promises, intimidation, or coercion with an "I don't remember" answer. Evans testified that Officer Everett's and social worker Frank's statements about helping her with counseling and parenting classes led her to believe that the two were interested in helping her, not prosecuting her. The sole evidence favorable to the prosecution as to what occurred in the second interview when the alleged inculpatory statement was made was Officer Everett's characterization that the second interview "was much calmer" than the first, whereas Evans' testified that the second interview was "more yelling, more accusing" than the first interview.

The district court found that the police officer's technique and approach during the first interview were characterized quite accurately at the hearing as "aggressive" and further commented that "[i]t is, to say the least, unusual to encounter one in which the tone and technique of the interview is as aggressive, insistently accusatory, and demanding as this one is." The district court found it important that despite the aggressiveness, Evans persistently and consistently denied culpability in this first interview. Details as to what transpired during the second interview when Evans made her alleged inculpatory statement were not developed by the prosecution and the district court ruled that the prosecution had not met its burden of proof that the statement was voluntary and granted the suppression motion. This Court granted the State's petition for a writ of review pursuant to WYO. R.APP. P. 13.02.

*Reviewability*

 This Court has twice reviewed a district court's suppression decision on the State's petition for a writ of certiorari. *See State v. Heiner*, 683 P.2d 629 (Wyo.1984), and *State v. Welch*, 873 P.2d 601 (Wyo.1994). *Heiner* held that certiorari was appropriate because of the importance of the evidence suppressed; the constitutional magnitude of the issues raised; and the importance of

determining the rule with respect to such matters in the State of Wyoming. *Heiner*, 683 P.2d at 632–33. In this case, the district court's decision was also premised upon constitutional grounds, presenting this Court with issues of constitutional magnitude; the record indicates that the suppression or use of the evidence is important to the prosecution of this case because of the limited amount of evidence which exists; and whether the district court made a serious error of law concerning the State's burden of proof presents a significant question. Accordingly, we find our review to be appropriate. We now turn to a review of the district court's ruling to grant the suppression motion.

### STANDARD OF REVIEW

 We review de novo a district court's ruling on a motion to suppress for involuntariness. *Stone v. State*, 745 P.2d 1344, 1348 (Wyo.1987) (citing *Miller v. Fenton*, 474 U.S. 104, 104, 106 S.Ct. 445, 446, 88 L.Ed.2d 405 (1985)). It is well established that when reviewing a district court's ruling on a motion to suppress we do not disturb findings on factual issues made by the district court unless they are clearly erroneous. *Bravo v. State*, 897 P.2d 1303, 1305 (Wyo.1995). Because the district court at the suppression hearing has the opportunity to assess the credibility of the witnesses and the weight to be given the evidence and to make the necessary inferences, deductions and conclusions, we view the evidence in the light most favorable to the district court's determination. *Wilson v. State*, 874 P.2d 215, 218 (Wyo. 1994).

### DISCUSSION

#### *The Rule of Law*

Confessions, admissions, and statements are constitutionally required to be voluntary by the Fifth and Fourteenth Amendment of the United States Constitution and by Art. 1, § 6 of the Wyoming Constitution. *Lego v. Twomey*, 404 U.S. 477, 478, 92 S.Ct. 619, 621, 30 L.Ed.2d 618 (1972); *Black v. State*, 820 P.2d 969, 971 (Wyo.1991). The voluntariness requirement has been a part of the United States Supreme Court's constitutional juris-

prudence since its decision in *Bram v. United States,* 168 U.S. 532, 542, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897). Additional constitutional requirements concerning voluntariness were imposed by the Court's decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), for custodial interrogations.

 It is well established, however, that satisfying *Miranda* does not resolve the question of voluntariness. A confession may be found involuntary because of the means used to obtain it. *Coyote v. United States,* 380 F.2d 305, 310 (10th Cir.1967), *cert. denied,* 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484 (1967); *People v. Scott,* 198 Colo. 371, 600 P.2d 68, 69 (1979). A confession which is the product of either mental or physical coercion by the government is untrustworthy and cannot be used for any purpose in the trial of the case. In Wyoming, the State has the burden of proving by a preponderance of the evidence, under the totality of the circumstances, that a confession, admission, or statement was given voluntarily. *Garcia v. State,* 777 P.2d 603, 606 (Wyo.1989); *Dodge v. State,* 562 P.2d 303, 308–09 (Wyo.1977). Admission of an involuntary confession offends due process, whether or not the defendant was in custody when the confession was given. *Black,* 820 P.2d at 971. In resolving the voluntariness issue, the trial court must consider the totality of the circumstances under which the statement was given, including:

> [T]he atmosphere and events surrounding the elicitation of the statement, such as the use of violence, threats, promises, improper influence or official misconduct, the conduct of the defendant before and during the interrogation and the defendant's mental condition at the time the statement is made.

*People v. Pearson,* 725 P.2d 782, 783 (Colo. 1986) (citations omitted).

 Statements are made voluntarily if they are the product of a citizen's free and deliberate choice rather than of governmental intimidation, coercion, or deception. *Bravo,* 897 P.2d at 1305. "Involuntariness requires coercive state action, such as trickery, psychological pressure, or mistreatment."

*Withrow v. Williams,* 507 U.S. 680, 708, 113 S.Ct. 1745, 1762, 123 L.Ed.2d 407 (1993) (O'Connor, J., concurring) (citing *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986)). We have held that voluntariness must proceed from the spontaneous suggestion of the citizen's own mind, free from the influence of any extraneous disturbing cause. *Maki v. State,* 18 Wyo. 481, 487, 112 P. 334, 335 (1911). In *State v. Jones,* 73 Wyo. 122, 276 P.2d 445 (Wyo.1954), we quoted from Wharton on Criminal Evidence that "even a slight inducement held out by such a person [in a position of authority] renders the confession involuntary." *Jones,* 73 Wyo. at 144, 276 P.2d at 455; *see also Brady v. United States,* 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970) (similarly holding that even a slight inducement will render a statement involuntary). *Jones* quoted approvingly of a New Mexico decision:

> When direct or implied promises made by the person in authority are shown "the law cannot measure the force of the influence thereby produced; neither can the courts determine in what degree they affected the mind of the accused and to what extent they entered into his decision to confess. Hence, the rule is established that, ... confessions which are made [under such conditions] must be excluded."

*Jones,* 73 Wyo. at 141, 276 P.2d at 453 (quoting *State v. Dena,* 28 N.M. 479, 214 P. 583, 584 (1923)). Our later decisions summarize that a confession offends due process if the suspect's will was overborne by the police and the suspect's capacity for self-determination was seriously impaired. *Yung v. State,* 906 P.2d 1028, 1034 (Wyo.1995). In Wyoming, coercive police tactics violate the due process clause of Wyo. Const. Art. 1, § 6 and statements elicited pursuant to these tactics may be suppressed. *Yung,* 906 P.2d at 1035. This Court has not yet decided whether coercion is a necessary predicate to finding that a confession is involuntary under our state constitution; however, coercive government activity is a necessary predicate to finding involuntariness within the due process clause of the Fourteenth Amendment. *Garcia,* 777 P.2d at 606. Once the evidence establishes

state actor coercion, a court must consider the effect of that coercion on the defendant's choice to confess or make an admission or statement. *Id.* Unless the court finds that coercive conduct caused the defendant to speak, the court must find the statement to be voluntary and the statement is admissible. *Id.* We recognize that coercion can be mental as well as physical. *Id.* The use of tricks or factual misstatements in and of themselves does not render a confession involuntary. *Id.*

 Although the prosecution bears the burden of proving a confession, statement, or an admission is voluntary by a preponderance of the evidence, the movant at a suppression hearing may be required to go forward with evidence on the issue of the involuntariness of the statement and the State may then rebut the issue. *Bravo,* 897 P.2d at 1305. This Court has defined "burden of proof" as "meaning the necessity of establishing a fact to a legally required extent, or the necessity of finally establishing a fact." *Garcia,* 777 P.2d at 605.

 Relevant factors concerning the characteristics of the accused and the details of the interrogation include:

whether the defendant was in custody or was free to leave and was aware of the situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as educational background, employment status, and prior experience with law enforcement and the criminal justice system.

*People v. Gennings,* 808 P.2d 839, 845 (Colo. 1991); *see also Yung,* 906 P.2d at 1034; *Witt*

*v. State,* 892 P.2d 132, 139–40 (Wyo.1995); *Vigil v. State,* 859 P.2d 659, 665 (Wyo.1993); *Dice v. State,* 825 P.2d 379, 386 (Wyo.1992); *Black,* 820 P.2d at 971–72; *Garcia,* 777 P.2d at 607; *Stone,* 745 P.2d at 1348; *Frias v. State,* 722 P.2d 135, 142 (Wyo.1986).

### Suppression Decision

 In its decision letter, the district court did not delineate the evidence it believed was significant to a totality of the circumstances analysis but did indicate its attention was focused on the second interview in which Evans allegedly admitted culpability. The court stated that Evans' alleged admission raised a question concerning the nature of the second interview that caused Evans to make an admission when she had earlier resisted doing so. Although the court's decision letter does not describe the condition of the record about the second interview, our review of the record reveals that the only evidence offered by the prosecutor as to what occurred in that second interview was Officer Everett's bare conclusion that the second interview was much calmer. This bare conclusion was not supported by any evidentiary details as to what transpired in the second interview and did not permit the court to find any basic facts which would support Officer Everett's conclusion. Evans stated that she denied culpability throughout most of the second interview, but she also described the second interview with the equally bare conclusory statement that it was worse than the first. Without evidentiary details, the two bare conclusions presented the court with evidence in equipoise. Because the prosecutor had the burden of proof, evidentiary equipoise necessitated the court's ruling that the prosecutor had failed in his burden of proof. The State asserts that this ruling is an abuse of discretion because a totality of the circumstances analysis of the evidence presented requires a finding that the statement was voluntary.

Evans contends that once she asserted the statement was involuntary, the burden shifted to the State to prove it voluntary and, therefore, her statement was rebuttably pre-

sumed to be involuntary. Because her confession was presumed involuntary, Evans claims that she had no burden to demonstrate its involuntariness and the district court did not abuse its discretion in finding that the State had failed in its burden of proof. Evans points to Arizona, Oregon, and Arkansas as states which hold that a confession is presumed to be involuntary. In Arizona and Oregon, before a confession can be admitted into evidence, the prosecution is required to show that the confession was made freely and voluntarily.

A presumption is an inference in favor of a particular fact. BLACK'S LAW DICTIONARY 1185 (6th ed.1990). A presumption shifts the burden of producing evidence and may assign the burden of persuasion as well. ED-WARD W. CLEARY, MCCORMICK ON EVIDENCE, BURDEN OF PROOF AND PRESUMPTIONS § 343 at 968 (3d ed.1984). The reasons for creating particular presumptions are similar to the considerations for assigning the burden of proof. *Id.* When the State seeks to admit a confession into evidence in Arizona and Oregon, it is presumed involuntary until the State shows by a preponderance of the evidence that the confession was made freely and voluntarily. *State v. Edwards,* 111 Ariz. 357, 529 P.2d 1174, 1177–78 (1974); *State v. Ely,* 237 Or. 329, 390 P.2d 348, 349 (1964). It has been said by this Court, with respect to custodial interrogation, that confessions are not presumed to have been voluntarily made but, on the contrary, the presumption is the other way. *Maki,* 18 Wyo. at 485–86, 112 P. at 335. It seems implicit that by this decision and by our decision to assign the burden of proof to the prosecution, we are in effect requiring the State to, first, produce evidence of voluntariness and, second, persuade as to voluntariness by a preponderance of the evidence. Our decisions evidence what was said in *Maki*—that, initially, we deem an accused's extrajudicial statement to be involuntary until the State meets its burden of proving and persuading that the statement was made freely and voluntarily.

 A presumption of involuntariness requires the State to come forward with witnesses, usually the interrogating officers, and show the circumstances under which the con-

fession was made, with sufficient evidentiary detail to enable the court to determine the question of voluntariness. Under a preponderance of evidence standard, the necessary proof need not meet a stringent requirement, but presentation of evidence at a suppression hearing is not a perfunctory exercise. To support the State's position that the defendant had not been threatened or promised anything in such a way as to coerce a confession, the State must supply the court with details of all relevant circumstances as well as the officer's reasons for believing the defendant appeared to freely decide for himself to forego the assistance of counsel and provide an incriminating statement. *See Madrid v. State,* 910 P.2d 1340, 1344 (Wyo.1996); *Yung,* 906 P.2d at 1033–35; *Bravo,* 897 P.2d at 1305; *Witt,* 892 P.2d at 140. When the testimony of the State's witness directly conflicts with the defendant's and presents a credibility contest, that contest is to be resolved by the district court and the district court's resolution deferred to upon review. *Dice v. State,* 825 P.2d 379, 387 (Wyo.1992).

In this case, the prosecution did not elicit evidentiary detail or testimony from Officer Everett which rebutted Evans' specific allegations, did not have a tape recording of the second interview, and did not call the other witness to the interview, Patricia Frank. The prosecutor's few questions mainly focused upon whether Evans was in custody although the defense had conceded there was no custodial interrogation and a *Miranda* violation issue was not presented. The basis of Evans' suppression motion was involuntariness in violation of the constitution's due process requirement. The prosecution elicited facts concerning Evans' age, education, level of intelligence, level of familiarity with the legal system, and physical condition which were helpful and appropriate but insufficient to satisfy its burden of proof. Evans' personal characteristics and the lack of physical duress are part of the inquiry, but details of interrogation methods and tactics must be presented to the court.

The prosecution had the affirmative obligation of providing details to the court which specifically described the circumstances of the second interview and rebutted Evans'

allegations of threat, coercion, and offer of reward. Although we make no requirement that interviews and interrogations must be electronically recorded, it is incumbent upon the prosecution to provide recording or witness evidence to the district court of a sufficient quality so as to satisfy its burden of proof, namely, proof that will assist the trial court in resolving contested factual issues and permit the court to determine the question of voluntariness. Here, this was not done. Without the State's description of the total circumstances surrounding Evans' statement in the second interview, the district court had no choice but to rule that the presumption of involuntariness had not been rebutted. Accordingly, we affirm the district court's ruling that the prosecutor had not met his burden of proof.

### Voluntariness

In its decision letter, the district court stated that it would not say that Officer Everett had coerced Evans' statement. The State contends that if coercion is not determined, then the district court must find that the statement is voluntary. Evans contends that a finding of coercion is not necessary under an independent analysis of the due process protections of Wyoming's state constitution. Whether our state constitution would require suppression of a confession for reasons other than state action need not be addressed in this case.

There is little question that a court's primary concern in examining the voluntariness of a confession is to prevent government coercion. Our society has decided against an inquisitorial system; the suspect must confess of her own free will and not because of government conduct which we as a society disapprove. Many court decisions have condemned the obviously offensive methods such as torture and physical violence. This case concerns psychological pressures which can be coercive under certain circumstances. We have considered some tactics similar to those employed by Officer Everett not to have been coercive when used by the police on different suspects, but in *Frias v. State*, 722 P.2d 135 (Wyo.1986), and *Black v. State*, 820 P.2d 969 (Wyo.1991), found other tactics,

used in combination with the particular personal characteristics of the accused, had resulted in coercion. *See Vigil*, 859 P.2d at 665 (not coercive to state that police detective would spend the rest of his career pursuing the truth of child's death); *Witt*, 892 P.2d at 139 (mere emotionalism and confusion during interrogation is not coercive); *Black*, 820 P.2d at 971–72 (coercive for police to continue interrogation when pregnant suspect was emotionally distraught and police already had a case against her); *Frias*, 722 P.2d at 142 (confession was involuntary where accused was coerced by threats, accusations, browbeating and frightening police tactics). Underlying these judicial determinations is a belief that the dignity of the individual, the dignity of our society, and the risk of unreliable confessions require that we not permit the government to employ those tactics which would coerce confessions. But, because we also have determined not to deprive government of those permissible tactics which motivate a suspect to confess of his own free will, we utilize a totality of the circumstances analysis. It is a fact-sensitive exercise and often results in cases which closely resemble each other being decided differently. There is little more direction that can be given than to say that the "tactics ... [will] tell the tale", *People v. Anderson*, 42 N.Y.2d 35, 396 N.Y.S.2d 625, 627, 364 N.E.2d 1318, 1320 (1977), and "the line between a voluntary and an involuntary confession is one composed of subtle gradations." *Commonwealth v. Snyder*, 427 Pa. 83, 233 A.2d 530, 536 (1967), *cert. denied*, 390 U.S. 983, 88 S.Ct. 1104, 19 L.Ed.2d 1281 (1968). The only definite rule is that "a confession obtained by [government] compulsion must be excluded whatever may have been the character of the compulsion." *Wan v. United States*, 266 U.S. 1, 14–15, 45 S.Ct. 1, 3–4, 69 L.Ed. 131 (1924).

▮▮▮▮▮▮ Our concern with governmental coercion does not, however, require the district court to find it before suppressing a statement in a failure-of-proof case. The district court, here, did determine that the "unusual" interrogation tactics employed in the first interview did not cause Evans to make her statement; however, Evans initiated a second interview and then made her

statement at the end of a thirty minute interview. Given what we do know occurred in the first interview, it is difficult to believe the second interview was much calmer; however, no evidence is presented from which a determination can be made. When, such as in this case, a district court does not have the evidence to make a determination that coercion did or did not cause the defendant to make a statement, the district court has no choice but to decide that the State has not rebutted the presumption that the statement was involuntary. The district court's ruling suppressing the statement for a failure of proof is, in essence, a ruling that the statement was involuntary.

Affirmed.

THOMAS, Justice, dissenting.

Normally, I am a strong advocate of the exercise of discretion by trial judges, but in this instance, I am compelled to part company with the trial judge and the Court majority. I am convinced that the trial judge did abuse his discretion in ruling that Tammy Evans' admission should be excluded because the State did not meet its burden of proof.

My position in the case focuses almost totally upon the decision letter of the trial judge. To avoid any possibility of unfairly quoting out of context, I set forth the entire text:

Dear Counsel:

This follows recent hearing on the Motion to Suppress and will give you the Court's reason for granting the motion in accord with the enclosed order. Before turning to the Motion to Suppress at the hearing, the Court ruled on a pending Motion to Remand to County Court. That motion is denied for the reasons stated on the record at the hearing.

The facts of the case are fairly straight forward. Defendant took her infant son to a pediatrician for symptoms not otherwise related to this case. During the course of that and subsequent examinations there were discovered two fractures of the baby's ribs; one seven to ten days old and the other older but not yet healed. In the opinion of an examining physician, the nature and location of the fractures in view of the pliability of an infant's bones made it unlikely that the injuries occurred in the way suggested by the defendant and likely that the infliction of the injuries was non-accidental. After these discoveries the defendant was interviewed by Officer Everitt and Ms. Frank of DFS at the Cheyenne Police Department.

After properly advising the defendant of her rights to counsel and to remain silent and receiving written acknowledgment and waiver of those rights, Officer Everitt interviewed the defendant for an hour and 12 minutes, a portion of which interview was recorded. The remainder was not, the recording devise having been inoperative for unexplained reasons. The Court accepts Officer Everitt's statement that the failure to record the entire interview was inadvertent. Officer Everitt's technique and approach during the interview were characterized quite accurately at the hearing as "aggressive." Important to this decision is that throughout the one hour and 12 minute interview, even given the aggressiveness of the interview technique, the defendant's denial of culpability were persistent and consistent. That interview ended and Officer Everitt turned to an interview of defendant's husband while the defendant remained outside.

After her husband's interview, the defendant, speaking to him, decided that she needed to go back to Officer Everitt to clarify some things that had occurred to her upon hearing her husband mention a certain individual's name. None of this second, shorter interview was recorded, but at or near its completion according to Officer Everitt's testimony the defendant admitted that she had squeezed the baby, squeezed him too hard, and knew at the time that she had hurt him. She then gave a short written statement that she had "hugged" the baby and hugging him too hard, hurt him. Defendant moved for suppression of the inculpatory statements contending that they were involuntary under the standards adopted by the Wyoming Supreme Court relying particularly on *Black v. State*, 820 P.2d 969.

The decision here is not based on *Black, supra,* the rationale of which is that even though Ms. Black was not in custody when she was interrogated (therefore rendering the requirement of the *Miranda* advisement inapplicable) the statement was not voluntary and that its admission therefore constituted a violation of "... the due process clause of the Wyoming Constitution". And, the Court said, "We are free to grant more rights to our citizens under the Wyoming Constitution than they are entitled to have under the United States Constitution." (Citations omitted.) There are similarities between the two cases because in *Black* the *Miranda* advisements were not required and in the present case they were given and acknowledged. Hence, in both cases, the necessity of the rights advisement isn't the issue. But the similarity ends there. In the view of this Court, the dissenting justices in *Black* had the more persuasive argument.

Nevertheless, Black remains authoritative where it is applicable. But it need not be and is not relied upon here. Other Wyoming Supreme Court precedent of long standing is applicable and controlling. "The State always has the burden of proving by a preponderance of the evidence that the confession was voluntary." *Garcia v. State,* 777 P.2d 603, 605 (Wyo.1989); *see also Dodge v. State,* 562 P.2d 303 (Wyo. 1977). This standard is reiterated in *Witt v. State,* 892 P.2d 132 (Wyo.1995), at 139: "In opposition to a motion to suppress allegedly involuntary statements, the prosecution must convince the trial judge by a preponderance of the evidence that the confession was voluntary." Here, as previously stated, there was a long period of aggressive interrogation throughout which the defendant denied culpability and the testimony is that she acknowledged culpability at the end of a subsequent shorter interview, none of which was recorded. This raises a question concerning the nature of the second interview that caused the defendant to make her admissions when she had earlier failed to do so. Given these facts, and under the totality of the circumstances here, the Court is unable to make the requisite finding that the State

has shown by a preponderance of the evidence that the statement was voluntary. The situation leaves unanswered too big a question.

It has been the observation of the Court over the past several years that the practice of local law enforcement agencies vary. Sometimes none of the questioning and admissions of a defendant are recorded. Sometimes all of them are. Sometimes part of it is recorded and part of it is not. Of course, there is no requirement that statements be recorded. But when part of a statement during which portion the accused consistently denies culpability, is recorded and a subsequent portion during which admissions are made is not recorded, questions arise. This Court has given police officers the benefit of any doubt when their testimony concerning the circumstances surrounding a statement is in direct conflict with that of the accused. This is simply because, all other things being equal, their testimony has a higher level of reliability and credibility than does that of many other witnesses. The obviously self-serving nature of the testimony of the accused, while by no means controlling, must be considered. But, law enforcement agencies expose themselves to criticism and doubt when there is no policy concerning the recording of statements and the practice varies so from case to case and within their work on a given case. And, correctly or not, there may be something of a local standard at work here.

This Court has for many years in one or another capacity had occasion to review statements taken by local law enforcement agencies. They have adhered to high standards. It is, to say the least, unusual to encounter one in which the tone and technique of the interview is as aggressive, insistently accusatory, and demanding as this one is. None of this is to say that Officer Everitt coerced the admissions from the defendant. But, it does make a record, the effect of which is that the State is not able to carry its burden of proof by a preponderance of the evidence that the admission was voluntary as required by the cited cases. Thank you.

I can discern nothing in the record of the hearing that distinguishes the circumstances surrounding the second statement from Evans from the circumstances of the first statement. The trial court assumed that the "aggressive" technique and approach of Officer Everitt continued. I assume, like the trial court, that in the second interview the exchange between Evans and Officer Everitt continued to be one in which "the tone and technique of the interview is as aggressive, insistently accusatory, and demanding as this one is." The trial court stated, however, "None of this is to say that Officer Everitt coerced the admissions from the defendant." The only differences then between the first interview and the second interview are that after the second interview Evans made a damaging admission and none of the second interview was recorded, while the first interview was recorded in part. Of course, the making of an admission is not a valid reason to conclude that the State failed in its burden of proof. The trial court conceded in its ruling that the law does not require recording. It follows that the failure to record is not a valid reason to conclude that the State failed to meet its burden of proof on the issue of voluntariness.

While the majority opinion offers a scholarly review of the law relating to voluntariness of confessions or admissions, it does not seem to have much to do with the rationale reported by the district court for its ruling. It is painfully clear to me that the purpose of the ruling in the district court was to require local law enforcement officers to record interviews of persons suspected of criminal activity. Yet, the district court in its ruling acknowledged that the law does not require recording, and does not address the multitude of different situations in which recording simply would be impracticable. What we really must discern is an effort, however well meaning, by an officer of the judicial department to direct the activities of the executive branch of government. That is not appropriate, and we have in the past made a point of the distinction. *See e.g., Hansen v. State,* 904 P.2d 811, 819 (Wyo.1995); *Billis v. State,* 800 P.2d 401, 413 (Wyo.1990); and *Petition of Padget,* 678 P.2d 870, 873 (Wyo.1984).

I have no hesitancy in stating unequivocally that an order of a trial court to require the recording of all statements of persons suspected of criminal activities would fall afoul of our constitutional doctrine separating the powers of the judicial department from the powers of the executive department. An effort to accomplish that result by an evidentiary ruling cannot be approved. It clearly constitutes an abuse of discretion, whichever of our varying definitions of abuse of discretion one may care to invoke. The one that offers the best fit is found in *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986):

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

Surely the exercise of discretion in ruling upon the voluntariness of an admission is applied arbitrarily and capriciously when the goal the court seeks to accomplish is the invasion of the constitutional prerogatives of another department of government.

I would reverse this case and remand it for trial at which the admission by Evans would be admitted into evidence, with the issue of voluntariness being submitted to the jury.