Richard Vincent EDWARDS,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–356.

Supreme Court of Wyoming.

Jan. 25, 1999.

E. Courtney Gruber and Donald J. Rissler of Central Wyoming Law Associates, P.C., Riverton, Wyoming, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

MACY, Justice.

Appellant Richard Edwards appeals from the judgment and sentence which was entered after a jury convicted him of aggravated assault and battery and second-degree murder.

We affirm.

## ISSUES

Edwards presents four issues for our review on appeal:

ISSUE I.

Did the trial court err in holding that the burden of laying the foundation for self-defense was the responsibility of the defense and further requiring the testimony of the appellant to lay that foundation prior to admitting the self-defense evidence proffered by the defense?

ISSUE II.

Did the district court err as a matter of law in suppressing evidence of the victim's character trait for violence offered by the appellant to support his defense that he acted in self-defense?

ISSUE III.

Did the district court err as a matter of law when it refused to allow the defense to present any evidence linking the victim to the legal possession of firearms when relevant to prove that the appellant was justified in using deadly force in defense of himself and others in his home and that the victim was the aggressor?

ISSUE IV.

Was the admission of the appellant's statement of May 13, 1996, and the evidence derived therefrom a violation of the appellant's right to due process guaranteed under the State of Wyoming Constitution and the United States Constitution?

## FACTS

The victim's partially decomposed body was discovered in a culvert near Boysen Reservoir on April 11, 1996. A forensic pathologist performed an autopsy on the body and determined that the victim died as the result of two gunshot wounds. The victim also had a broken leg and severe bruising in various places on his body. Law enforcement officers investigated the victim's death and discovered that he was seen at the Cedar Bar in Riverton on March 6, 1996. The officers learned that Edwards and the victim argued in the bar on that day.

The officers interviewed Edwards on April 24, 1996, and Edwards denied being involved in the victim's death. During their investigation, the officers learned that Edwards sold his pickup truck shortly after the victim died. They recovered the truck and searched it, finding human blood that matched the victim's blood type. The officers also learned that the victim was at Edwards' house on March 6, 1996.

On May 13, 1996, Edwards entered into an agreement with the prosecutor in which he agreed to provide a complete factual accounting of the events surrounding the victim's death. In exchange for Edwards' cooperation, the prosecutor agreed not to file criminal charges against Edwards' wife (Karyn), Deborah Lezotte, or Lecky Speer, provided that they were not principals in or accessories before the fact to the victim's death. The agreement also stated that, if the information supplied by Edwards proved to be "substantially incorrect as determined by the Fremont County & Prosecuting Attorney, then this Agreement should be null and void and of no further force and effect."

In accordance with the agreement, Edwards explained his version of the events surrounding the victim's death. He admitted that he encountered the victim at the Cedar

* Retired November 2, 1998.

Bar on March 6, 1996. Edwards maintained that he went home after refusing to give the victim a ride downtown. Karyn, Lezotte, and Speer were at his house when he got there.

Edwards stated that the victim arrived unexpectedly at his gate later that evening and that he invited the victim to come into the house. Edwards, Karyn, Lezotte, Speer, and the victim sat in the family room, drinking beer and talking. Edwards claimed that the victim brought several handguns into the house and placed them in various locations around the family room. Edwards told the officers that the victim began acting in a very aggressive manner and that he argued with Lezotte and Speer. The argument escalated, and the victim pointed a gun at Speer.

After the victim pointed the gun at Speer, Edwards went into a bedroom and retrieved an inoperable .32 caliber revolver and a firecracker, and he took them to the family room. He claimed that he discharged the firecracker in the gun's barrel in order to intimidate the victim. When the firecracker exploded, the victim dropped the gun he was pointing at Speer, dove to the floor, and reached into his shirt. Edwards kicked the victim, and, thinking that the victim was reaching for another gun, he grabbed the gun that the victim dropped. He shot the victim twice.

Edwards stated that Lezotte and Speer left immediately after the shooting occurred. Early the next morning, Edwards loaded the victim's body and personal belongings into his truck and drove to Boysen Reservoir. He disposed of the body in a culvert near the reservoir. Throughout the interview, Edwards insisted that he shot the victim to protect himself and the other people in his home.

The officers interviewed Speer and Lezotte several times. After those interviews, David King, a criminal investigator with the Fremont County sheriff's department, told Edwards that the May 13, 1996, agreement was null and void because he gave false and misleading information in his statement. Edwards was charged with aggravated assault and battery and murder in the second degree. Karyn, Lezotte, and Speer were charged with being accessories after the fact. Karyn subsequently died, and Lezotte and Speer entered into plea agreements with the prosecutor wherein they agreed to fully cooperate with the prosecution of Edwards in exchange for having the charges against them reduced to misdemeanors.

Lezotte and Speer testified at Edwards' trial, and their accounts of the events surrounding the shooting of the victim differed significantly from Edwards' rendition. They testified that Edwards and the victim argued at the Cedar Bar on March 6, 1996, and that Edwards told the victim that, if he was a "snitch," he was "a dead man" and he would "take him out." Lezotte and Speer testified that they took Karyn home and that Edwards and the victim arrived later in Edwards' truck. Lezotte and Speer stated that the victim brought a small shaving kit containing various illegal drugs with him into the house and that the victim and Edwards went into a bedroom alone. When the victim and Edwards returned to the family room, the victim retrieved a gun from inside his clothing and put it under the coffee table.

According to Lezotte and Speer, the victim got some food from the kitchen and brought it to the family room to eat it. When the victim returned to the kitchen and was out of earshot, Edwards grabbed the gun and told the others that he was going to kill the victim. Lezotte and Speer attempted to leave the house, but Edwards ordered them to stay. Upon returning to the family room, the victim began arguing with Lezotte and Speer. Lezotte and Speer heard several gunshots and saw the victim fall to the floor. They heard the victim say that he was " 'burning up inside' " and " '[y]ou're killing me.' " Edwards stated that he brought the victim to his house in order to kill him. He then shot the victim again and kicked him. Edwards told Lezotte and Speer to go to the Cedar Bar and get Dean Willenbrecht. They followed Edwards' instructions, and, according to Speer, when he told Willenbrecht that Edwards needed him at his house, Willenbrecht stated, " 'We've got a body to get rid of.' "

Contrary to Edwards' version of the events surrounding the shooting, Lezotte and Speer testified that the victim did not point a gun at Speer. Speer also testified that he did not see Edwards with a firecracker. Lezotte and Speer agreed that they saw the victim with only one gun, and Lezotte stated that Edwards produced a second gun. Lezotte and Speer testified that Edwards threatened to kill them if they told anyone about the shooting.

Willenbrecht also testified at Edwards' trial. In contrast to Edwards' assertion that he disposed of the body by himself, Willenbrecht admitted that he assisted Edwards in the endeavor. He claimed that he went to Edwards' house after Lezotte and Speer told him Edwards needed him. Edwards told Willenbrecht that he deliberately shot the victim and then kicked him in the head in order to make him stay down. Willenbrecht testified that he and Edwards sat in the house and drank for several hours and, at 5:30 or 6:00 a.m. on March 7, 1996, they loaded the victim's body into the back seat of Edwards' truck. They disposed of the victim's body and personal property in separate culverts near Boysen Reservoir. Willenbrecht testified that Edwards threatened to kill him if he told anyone about the shooting.

The jury convicted Edwards of aggravated assault and battery and murder in the second degree, and it also determined that Edwards was a habitual criminal. The trial court entered a judgment against Edwards in accordance with the jury's verdict and sentenced Edwards to serve two concurrent life sentences. Edwards appealed to this Court.

## DISCUSSION

### A. Evidentiary Rulings

 In his first three issues, Edwards contests the trial court's exclusion of evidence that he contends would have supported his theory that, when he shot the victim, he was acting in defense of himself and the other people in his home. Determining the admissibility of evidence rests within the sound discretion of the trial court. *Punches v. State*, 944 P.2d 1131, 1136–37 (Wyo.1997); *James v. State*, 888 P.2d 200, 204 (Wyo.1994).

This Court will not disturb a trial court's evidentiary rulings unless the trial court clearly abused its discretion. *Hermreck v. State*, 956 P.2d 335, 338 (Wyo.1998). "The ultimate issue that we decide in determining whether there has been an abuse of discretion is whether or not the court could have reasonably concluded as it did." *State v. McDermott*, 962 P.2d 136, 138 (Wyo.1998). We disregard errors which are harmless even when we determine that the trial court ruled incorrectly on the admissibility of the proffered evidence. W.R.C.P. 61; W.R.A.P. 9.04; W.R.E. 103. Reversal is mandated only if the error "is prejudicial and it affects an appellant's substantial rights." *Candelaria v. State*, 895 P.2d 434, 439–40 (Wyo.1995).

 Edwards attempted to introduce evidence he claimed would have shown that the victim had a propensity for violence and was the first aggressor in their altercation. Specifically, Edwards sought to elicit testimony about the victim's reputation in the community as being a violent person, the victim's habit of carrying multiple weapons, and two specific instances when the victim's conduct was violent. Edwards also sought to introduce evidence of the victim's criminal history, which included several traffic stops and arrests in which the victim possessed guns and illegal drugs. The trial court refused to admit Edwards' proffered evidence.

W.R.E. 404 and 405 specifically address the admissibility of evidence of a victim's character. *See Taul v. State*, 862 P.2d 649, 655 (Wyo.1993). With certain exceptions, evidence of a person's character is not admissible to prove that the person acted in conformity therewith on a particular occasion. W.R.E. 404(a). An accused may, however, offer evidence of a pertinent character trait of a victim to show that the victim was the first aggressor. W.R.E. 404(a)(2).

W.R.E. 405 addresses the methods of proving character:

> (a) Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is

allowable into relevant specific instances of conduct.

(b) Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, or is in issue under Rule 404(a)(2), proof may also be made of specific instances of his conduct.

Wyoming's rule is identical, with one exception, to the comparable federal rule. W.R.E. 405(b) allows proof to be made of specific instances of conduct if the victim's character is at issue under W.R.E. 404(a)(2), while FED.R.EVID. 405 does not. *See United States v. Talamante*, 981 F.2d 1153, 1155–56 (10th Cir.1992), *cert. denied*, 507 U.S. 1041, 113 S.Ct. 1876, 123 L.Ed.2d 494 (1993) (holding that the federal rules of evidence do not allow admission of specific instances of the victim's conduct to prove that the victim was the first aggressor). The Wyoming Supreme Court comment accompanying W.R.E. 405 states: "The purpose of the added language in subsection (b) is to [e]nsure that the accused in assault or homicide cases may introduce .evidence of specific instances of the victim's conduct to prove that the victim was the first aggressor."

In his first issue, Edwards asserts that the trial court incorrectly determined that the defense was required to lay the foundation for self-defense before evidence of the victim's violent character could be admitted and that, to provide that foundation, Edwards had to testify. We note that the record is not clear as to whether or not the reason the trial court excluded the evidence of the victim's character was because Edwards did not provide a sufficient foundation. We will, however, address this issue in order to answer any outstanding questions.

This Court has recognized that evidence which shows that the defendant acted in self-defense must be on the record before proof of the victim's violent character may be admitted. *State v. Velsir*, 61 Wyo. 476, 159 P.2d 371, 374 (1945).

"The necessary preliminary showing or appearance of a case of self-defense may be adduced either in the evidence given on behalf of the state in its main case or by the defendant in his defense; the only indispensable prerequisite is that it precede the offered evidence of the decedent's character." 26 Am.Jur. 391–392.

*Id.* Rule 404(a)(2) allows a defendant to use evidence of the victim's violent character to prove that the victim was the first aggressor regardless of whether or not the defendant knew about the victim's violent character when the altercation occurred. 22 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5237 (1978). If, however, the defendant wants to use evidence of the victim's violent character to show that he was fearful of the victim, he must demonstrate that he knew about the victim's violent character. *Id.*

Edwards claimed that the victim was the first aggressor in their altercation. Prior to Edwards' attempt to introduce evidence of the victim's violent character, Investigator King testified that Edwards said he shot the victim in order to protect himself and the other people in his home. The jury was also shown a videotape made by law enforcement officers in which Edwards reenacted his version of the events surrounding the shooting. Edwards' statement and the videotape supported his self-defense claim and provided the requisite foundation for the admission of evidence of the victim's violent character.

Accordingly, if the trial court actually determined that a sufficient foundation had not been laid for the admission of evidence of the victim's violent character, its ruling was erroneous. Nevertheless, our determination that there was a sufficient foundation laid does not mean that the evidence was necessarily admissible. We must consider other evidentiary rules, as well, to determine whether the proffered evidence was admissible.

Edwards attempted to elicit testimony from Deputy Fred Webber about the victim's reputation in the community as being a violent person and the victim's habit of carrying multiple guns. Because the victim's violent character was pertinent to Edwards' claim that the victim was the first aggressor in their altercation, evidence of the victim's reputation in the community was admissible. W.R.E. 404(a)(2), 405; *see also Mortimore v.*

*State*, 24 Wyo. 452, 161 P. 766, 771 (1916). The trial court should have, therefore, allowed the deputy to testify about the victim's reputation. We are not convinced, however, that the trial court's error prejudiced Edwards. Other evidence of the victim's violent disposition was presented at the trial, and the deputy's testimony would have been redundant. Similarly, the deputy's proposed testimony that the victim had a habit of carrying multiple guns would have simply echoed other evidence which was admitted at the trial.

◼ Edwards also sought to elicit testimony from Deputy Webber about specific violent acts that the victim had committed. In his offer of proof, Edwards stated that the deputy would testify about certain acts, which were part of the victim's criminal history, including: (1) a 1990 incident in which the victim held his wife hostage and fired a gunshot into the air; and (2) another 1990 arrest. The trial court did not allow the deputy to testify about these acts.

◼ In *Braley v. State*, 741 P.2d 1061 (Wyo.1987), we considered the admissibility of the evidence of a victim's criminal record. The defendant in that case argued that the trial court erred by not allowing him to present evidence of the victim's criminal history, which would have supported his claim that he killed the victim in self-defense. 741 P.2d at 1067–69. We considered W.R.E. 401, 402, 403, and 404 and determined that a victim's criminal record may be relevant if it illustrates that the victim engaged in life-threatening behavior or in behavior which may have resulted in serious bodily harm. *Id.* In the final analysis, however, we concluded that the trial court did not err when it excluded the evidence because, under W.R.E. 403, the probative value of the evidence was outweighed by its prejudicial effect.

In the case at bar, the dispute between the victim and his wife demonstrated the victim's violent character and, arguably, supported Edwards' claim that the victim was the first aggressor. The victim engaged in life-threatening behavior when he fired a gunshot. The evidence was, therefore, admissible; however, Edwards was not prejudiced by the trial court's refusal to allow Deputy Webber to testify about the episode because the general nature of the incident had already been related to the jury. During the defense's cross-examination of Investigator King, the investigator testified he was aware that, in 1990, the victim was involved in a dispute with his wife and fired a shot during the altercation. The investigator testified that the incident showed the victim could be violent. The deputy's testimony about the marital dispute would have, therefore, been of little additional benefit to Edwards' defense.

Edwards stated in his offer of proof that Deputy Webber would also testify about another 1990 arrest. Edwards did not, however, describe the incident further. His offer of proof was not adequate, therefore, because he did not explain whether the evidence would have shown that the victim had acted violently. *Braley*, 741 P.2d at 1069; *see also Rudolph v. State*, 829 P.2d 269, 274 (Wyo. 1992); *Velsir*, 159 P.2d at 374. The trial court did not abuse its discretion by refusing to allow the deputy to testify about that incident.

◼ Edwards complains that the trial court did not allow him to present evidence that the police discovered the victim in possession of guns and illegal drugs on several occasions. The record does not reveal that the victim engaged in life-threatening behavior or in behavior that posed a risk of serious bodily harm during those encounters with the police. Consequently, the evidence was not relevant to Edwards' claim that he acted in self-defense. W.R.E. 404(a)(2); *Braley*, 741 P.2d at 1069. Furthermore, other evidence presented at the trial informed the jury that the victim was involved with illegal drugs and owned numerous firearms. The proffered evidence would have, therefore, been cumulative.

◼ At the trial, the prosecution presented evidence that the police recovered a .380 caliber semiautomatic handgun from Edwards' home and a .44 caliber pistol from Speer that Speer claimed Edwards had given to him after the shooting occurred. Edwards sought to have Mary Longtine, Shane Longtine, and Jim Keel testify that the vic-

tim owned numerous guns including a .44 magnum and a .380 caliber pistol. Edwards insists that this testimony would have corroborated his version of the shooting by confirming that the victim owned weapons similar to those recovered by the police.

We are not able to discern the relevance of the proffered testimony to Edwards' defense. Edwards told the police that the victim brought a .45 caliber handgun, a .41 magnum, and a .357 caliber pistol into his house on the night of the shooting. The guns that the three witnesses would have testified about were different from the guns that Edwards claimed the victim had with him on the night of the shooting. Furthermore, Edwards told the police that he disposed of the victim's guns after he left the victim's body at the reservoir. The witnesses' proffered testimony would not have corroborated Edwards' story or furthered his defense. The trial court did not, therefore, commit prejudicial error when it refused to allow the three witnesses to testify.

## B. Suppression Issue

Edwards asserts that the trial court violated his right to due process of law when it refused to suppress his May 13, 1996, statement to the police and all the evidence that the prosecution derived from that statement. He claims that his statement was not voluntary because the prosecution coerced and deceived him into executing the May 13, 1996, agreement and giving his statement. Edwards insists that the prosecution later improperly nullified the agreement.

Edwards filed several pretrial motions with the trial court, seeking to have his statement suppressed and the case against him dismissed. The prosecution responded to Edwards' motions, arguing that he voluntarily entered into the agreement and gave his statement and that the prosecution appropriately voided the agreement because Edwards' statement was "substantially incorrect." The trial court determined that the prosecution proved, by a preponderance of the evidence, that Edwards' May 13, 1996, statement was voluntary and, consequently, denied Edwards' motion to suppress. The trial court apparently denied Edwards' other

motions, as well. Investigator King ultimately related Edwards' statement to the jury.

■■■■■ We review *de novo* a trial court's ruling on a defendant's motion to suppress a statement on the grounds that it was made involuntarily. *State v. Evans*, 944 P.2d 1120, 1124 (Wyo.1997); *Simmers v. State*, 943 P.2d 1189, 1194 (Wyo.1997). In conducting our review, we defer to a trial court's findings of fact unless those findings are clearly erroneous. *Simmers*, 943 P.2d at 1194. This Court considers the evidence in the light most favorable to the trial court's determination because the trial court has the opportunity to hear the evidence and to assess the credibility of the witnesses. *Id.*

■■■■ The Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 6 and 11 of the Wyoming Constitution require that confessions and statements be voluntary. *Evans*, 944 P.2d at 1124. A statement that is obtained by coercion is not trustworthy and may not be used at trial against the person who made the statement. *Simmers*, 943 P.2d at 1195. A defendant is deprived of his right to due process of law when an involuntary statement is admitted at the trial against him. *Evans*, 944 P.2d at 1125. A statement is considered to be voluntary when it is made by the defendant of his own free and deliberate choice and not because of intimidation, coercion, or deception. *Simmers*, 943 P.2d at 1195. The prosecution has the burden of proving by a preponderance of the evidence that the defendant's statement was voluntary. *Evans*, 944 P.2d at 1125; *Simmers*, 943 P.2d at 1195.

■■■ In determining the voluntariness of a defendant's statement, the trial court must examine the totality of the circumstances that existed when the statement was procured, including:

"the atmosphere and events surrounding the elicitation of the statement, such as the use of violence, threats, promises, improper influence or official misconduct, the conduct of the defendant before and during the interrogation and the defendant's mental condition at the time the statement is made."

*Evans,* 944 P.2d at 1125 (quoting *People v. Pearson,* 725 P.2d 782, 783 (Colo.1986) (citation omitted)). Relevant factors pertaining to the defendant's characteristics and the nature of the interrogation include:

"whether the defendant was in custody or was free to leave and was aware of the situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as educational background, employment status, and prior experience with law enforcement and the criminal justice system."

*Evans,* 944 P.2d at 1126 (quoting *People v. Gennings,* 808 P.2d 839, 845 (Colo.1991)).

■ Investigator King told Edwards on May 3, 1996, that the police believed he was involved with the victim's death. At that time, Edwards was in official custody for an unrelated matter. On May 10, 1996, Edwards told Investigator King that he was willing to give the police information about the victim's death in exchange for Karyn receiving immunity. Edwards was advised of and understood his right to be represented by counsel, but he declined representation. An attorney arrived while Edwards was talking to Investigator King, and Edwards spoke privately with the attorney. After the attorney left, Edwards continued conversing with Investigator King.

On May 13, 1996, Edwards met with Investigator King and the prosecutor and reiterated his desire to enter into an agreement with the prosecution. At that meeting, he demanded immunity for Karyn, Lezotte, and Speer in exchange for his statement. The prosecutor drafted the agreement and explained it to Edwards, including the provision that would allow the prosecution to nullify the agreement if Edwards' statement proved to be "substantially incorrect." Edwards signed the agreement, expressly waived his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and gave his statement to the authorities.

On May 21, 1996, Investigator King told Edwards that the agreement was null and void because his statement included false and misleading information. The prosecution decided to void the agreement after it had collected physical evidence and conducted several interviews with Lezotte and Speer.

The totality of the circumstances supports the trial court's determination that the prosecution met its burden of proving that Edwards voluntarily gave his statement. Edwards does not direct us to any evidence that suggests the officers or the prosecutor intimidated him or improperly induced him to sign the agreement or to give his statement. He suggests in his brief that the prosecutor engaged in improper conduct by convincing him to sign the agreement and to give his statement when the prosecutor actually did not intend to honor the agreement. We have not found evidence in the record to support Edwards' bold and unsubstantiated accusations. To the contrary, Edwards actively negotiated the terms of the agreement, and he was fully informed about his rights and the nature of the agreement before he executed it and before his gave his statement.

■ Furthermore, taking the evidence in the light most favorable to the trial court's determination, we conclude that the prosecution was justified in nullifying the agreement. Inconsistencies existed between Edwards' statement and the other evidence in the case concerning how the victim arrived at Edwards' house, the events surrounding the shooting, the origin and extent of the victim's physical injuries, and the roles of other persons in the shooting and in the disposal of the victim's body. The trial court did not err, therefore, when it denied Edwards' motion to suppress.

## CONCLUSION

Although evidence of a homicide victim's propensity for violence is generally admissible when an accused claims that he acted in self-defense, the trial court did not, in this case, commit reversible errors by refusing to admit Edwards' proffered evidence of the victim's violent character. In addition, the trial court properly concluded that Edwards' statement was admissible at the trial. Edwards' conviction is, therefore, affirmed.