**Thomas SIMMERS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 96-276.

Supreme Court of Wyoming.

Aug. 21, 1997.

1190

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Jason M. Tangeman, Assistant Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Sr. Assistant Attorney General; Georgia L. Tibbetts, Sr. Assistant Attorney General; Mary Beth Wolff, Special Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Thomas Simmers (Simmers) appeals from the judgments and sentences [1] convicting him

---

1. Simmers was charged with and convicted of twelve counts of second degree sexual assault,

of twelve counts of second degree sexual assault in violation of Wyo. Stat. § 6–2–303(a)(v). Based on testimony concerning his conduct with three young victims, a jury found him guilty of all charges brought against him. Simmers claims his two confessions were involuntary and should have been suppressed, the trial should have been severed as to each victim, the court erred in admitting improper hearsay testimony and the young victims were not competent to testify in court. Finding the trial court did not abuse its discretion or commit any legal errors, we affirm the judgments and sentences.

## ISSUES

Appellant Simmers submits the following issues for our review:

I. Whether the appellant's confession to Detective Bilkie was involuntary thus violating the appellant's right against self-incrimination under the Fifth Amendment of the United States Constitution and Art. 1, § 11 of the Wyoming Constitution?

II. Whether statements made by the appellant to Deputy Crowder while the appellant was being processed for incarceration should have been suppressed as they were involuntary and violated the appellant's right against self-incrimination under the Fifth Amendment of the United States Constitution and Art. 1, § 11 of the Wyoming Constitution?

III. Whether the trial court abused its discretion in allowing Susan Kotowicz, a licensed social worker, to testify to hearsay statements made [by] the child victim SS?

IV. Whether the trial court erred in refusing to sever the three charges of second degree sexual assault?

V. Whether the trial court erred in finding the child witness[es] AJ and AB competent to testify at trial?

consisting of the following: Criminal Action No. 23–361, four counts of second degree sexual assault against AJ; Criminal Action No. 23–362, three counts of second degree sexual assault against SS; and Criminal Action No. 23–363, five counts of second degree sexual assault against AB. *In each individual criminal action*

In its brief, Appellee State of Wyoming presents the following statement of the issues:

I. Did the district court properly refuse to suppress the statements Appellant made to law enforcement?

II. Did the district court err in allowing Susan Kotowicz to testify regarding the statements made to her by one of the child victims?

III. Did the district court properly deny Appellant's motion to sever the criminal cases for purposes of trial?

IV. Did the district court abuse its discretion in allowing the child victims, AJ and AB, to testify at trial?

## FACTS

While watching a television show concerning child sexual abuse, AJ told his mother that he had been forced to suck Simmers' penis at the day care run by Simmers' mother. On December 11, 1995, AJ's father reported the incident to the Cheyenne Police Department. When an officer contacted Simmers concerning AJ's allegations, Simmers denied them and provided a statement to that effect. Shortly thereafter, a Cheyenne police detective asked Simmers to come to the police station for a follow-up interview, and Simmers complied with that request.

At the beginning of the interview, the detective informed Simmers of the allegations against him and advised him of his *Miranda* rights, both verbally and in writing. Simmers stated that he understood his rights and signed a written waiver of rights form. Simmers then agreed to talk to the detective regarding the charges against him.

Simmers initially denied the allegations against him; however, as the interview progressed, he asked the detective to turn off the tape recorder. While the tape recorder was turned off, Simmers and the detective discussed potential consequences, including

against him, he was sentenced to serve eight to ten years on each count, the sentences on each count to run concurrently. However, the eight to ten year sentences from the three criminal actions are to run consecutively, for a total sentence of twenty-four to thirty years.

the likelihood of probation, if the allegations were true. The detective told Simmers that probation is always a possibility. After an eighteen minute break, the tape recorder was turned back on and Simmers then admitted that, on four separate occasions, Simmers had asked AJ to suck his penis. Simmers acknowledged that AJ did not appear to like what occurred. He also admitted that he told AJ not to tell anyone about what happened.

When the detective asked Simmers if this conduct happened with any other children, Simmers first asked for something to drink. The detective turned off the tape recorder. After a nine minute break, the tape recorder was turned back on and Simmers admitted to numerous other incidents involving the other two victims, SS and AB. Simmers reported details similar to the incidents with AJ. Simmers admitted to making SS suck his penis on three occasions and to making AB suck his penis on five occasions. On a later date, the detective interviewed AB. He also obtained video taped interviews of AJ and SS, using the children's parents to conduct the interview.

Simmers was arrested on December 27, 1995, and transported to the Laramie County Detention Center. He seemed extremely upset while he was being processed for incarceration, or "booked," by the sheriff's deputy. The deputy performed a routine risk assessment of Simmers, whereupon Simmers admitted he was considering suicide. The deputy took Simmers into an interview room and, while trying to calm him, suggested that Simmers remember that he had not been convicted of the crimes he was charged with yet. At that point Simmers admitted his guilt to the deputy. The deputy advised Simmers not to say anything which might further incriminate him.

Simmers filed several motions before trial, including a motion to suppress, as involuntary, the statements he made to the detective, a motion to sever the cases as to each child for trial purposes and a motion for a hearing to determine whether the minor victims were competent to testify at the trial. The motions to sever and to suppress were denied after a hearing. Before allowing the testimony of the child victims, the district court held a hearing to determine their competency to testify concerning the alleged criminal offenses. The court found AJ and AB sufficiently competent to testify, but disallowed the testimony of SS. In lieu of direct testimony from SS, the district court, over Simmers' objection, allowed a licensed social worker to testify regarding the statements made to her by SS.

At trial AB and AJ testified about their encounters with Simmers, and the social worker testified about statements made to her by SS. The detective and the sheriff's deputy also testified about the incriminating statements Simmers made to them. Finally, AJ's father, SS's father, and AB's mother testified that the children were enrolled at the Simmers' day care during the time periods the sexual assaults were alleged to have occurred. The jury returned a guilty verdict on all twelve counts against Simmers. This appeal timely followed.

### DISCUSSION

*Statements to Law Enforcement Officials*

In *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), the United States Supreme Court determined that voluntariness of a confession is a legal question meriting independent consideration, not a factual issue which we presume is correct. *Stone v. State,* 745 P.2d 1344, 1348 (Wyo.1987). Therefore, we undertake a *de novo* review of a district court's ruling on a motion to suppress a statement for involuntariness. *State v. Evans,* No. 96–104, 944 P.2d 1120 (Wyo.1997) (citing *Stone,* 745 P.2d at 1348). However, factual findings made by the district court on a motion to suppress are not disturbed unless they are clearly erroneous. *Evans* at 1124. In light of the trial court's opportunity to hear the evidence and assess the credibility of the witnesses, evidence is viewed in the light most favorable to the district court's determination. *Witt v. State,* 892 P.2d 132, 140 (Wyo.1995) (quoting *Wilson v. State,* 874 P.2d 215, 218 (Wyo. 1994)).

Simmers claims that his confession to the detective was involuntary because it was the

product of police coercion and deception. He contends that he was coerced into confessing by the detective's non-adversarial, friendly interrogation style and by a promise of leniency in sentencing, specifically a mention of the possibility of probation. Simmers also argues that the court improperly applied a reasonable person standard when it determined his statement was voluntary because his impaired mental ability led him to believe he had been promised probation, even though a reasonable person of ordinary intelligence may not have believed he had been promised probation.

■ The Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 6 and 11 of the Wyoming Constitution require confessions, admissions and statements to be voluntary. *See Kolb v. State,* 930 P.2d 1238, 1242 (Wyo.1996); *Black v. State,* 820 P.2d 969, 971 (Wyo.1991); *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964). Satisfying the requirements set out in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not resolve the question of voluntariness. *Evans* at 1125. "A confession may be found involuntary because of the means used to obtain it." *Id; see also Dice v. State,* 825 P.2d 379, 387 (Wyo.1992) (State must prove that statement was not obtained in violation of the Miranda doctrine and that the statement was given voluntarily, citing *Colorado v. Connelly,* 479 U.S. 157, 163, 107 S.Ct. 515, 519, 93 L.Ed.2d 473 (1986)). A coerced confession is considered untrustworthy and cannot be used for any purpose in a trial against the person making the statement. *Evans* at 1125.

■ The voluntariness of an accused's statements is determined by examining the totality of the circumstances surrounding the interrogation. *Witt,* 892 P.2d at 139. Statements are voluntary if they are "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* (citing *Vigil v. State,* 859 P.2d 659, 664 (Wyo. 1993), which quotes *Frias v. State,* 722 P.2d 135, 142 (Wyo.1986)). "[S]tatements [made] by the police to the effect that it would probably go easier for the accused if [he] cooperated have been declared innocent and

constitutionally acceptable." *Witt,* 892 P.2d at 139. "Emotionalism, confusion, and subjective perception do not necessarily invalidate a statement or confession." *Vena v. State,* 941 P.2d 33, 37 (Wyo.1997). The burden rests with the State to prove, by a preponderance of the evidence, the voluntariness of the accused's statements. *Dodge v. State,* 562 P.2d 303, 308 (Wyo.1977).

■ Simmers contends the district court should have applied a subjective standard to determine whether his statement was made voluntarily. He claims that, based on his testimony that he thought the detective promised him probation, the district court should have found his statement was involuntary. Although courts have considered the accused's age, intelligence, education, physical and mental characteristics, and amount of experience with the criminal justice system in determining whether a confession was voluntary, *see e.g. Evans* at 1126–1127, and cases cited therein; *United States v. Perdue,* 8 F.3d 1455, 1466 (10th Cir.1993); *Miller v. Fenton,* 796 F.2d 598, 606–07 (3rd Cir.1986), *cert. denied,* 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986), consideration of those personal characteristics does not relegate the determination of voluntariness to the defendant's subjective beliefs.

The Colorado Supreme Court has delineated several factors the trial court might consider under the totality of the circumstances:

> [T]he atmosphere and events surrounding the elicitation of the statement, such as the use of violence, threats, promises, improper influence or official misconduct, the conduct of the defendant before and during the interrogation and the defendant's mental condition at the time the statement is made[,]

*Evans* at 1125 (quoting *People v. Pearson,* 725 P.2d 782, 783 (Colo.1986));

> whether the defendant was in custody or was free to leave and was aware of the situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interro-

gation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as educational background, employment status, and prior experience with law enforcement and the criminal justice system.

*Evans* at 1126 (quoting *People v. Gennings*, 808 P.2d 839, 845 (Colo.1991)).

Given the totality of the circumstances in the case at bar, the district court properly determined that Simmers' statements were voluntary. Simmers went to the police station voluntarily, was advised of and clearly understood his *Miranda* rights, and chose to speak with the detective. The interview was friendly, not adversarial, and lasted approximately one hour. Simmers was aware of the purpose of the interrogation, to determine if he sexually assaulted AJ. He also was informed of the possible penalties involved if he was found guilty of such conduct.

Additionally, we note the following facts from the taped conversation between Simmers and the detective. Simmers initially agreed to talk to the detective after being advised of his rights, including his right to an attorney, and made statements consistent with understanding those rights. Simmers came up with his own, fairly elaborate explanation for AJ's allegations. When questioning became more specific, Simmers claimed a lack of memory. When confronted with the specific allegations and an explanation from the detective that it was best for him to be honest and get things out in the open now, Simmers asked the detective to turn off the tape recorder.

Simmers recalled asking all three victims to suck his penis and that none of them liked it. He admitted telling the victims not to tell anyone what he had done to them. Simmers also acknowledged that it was his fault. At the end of the interview, Simmers stated that there were no other victims, that it would not

happen again and that he needed to get some help. Although the record indicates Simmers was not experienced with law enforcement and was of below average intelligence, there is no evidence in the record tending to indicate that Simmers was unusually susceptible to coercion or easily influenced by the detective.

Finally, during the taped interview, after the tape was turned back on and before Simmers confessed, Simmers indicated that no promises or guarantees were made to him by the detective. At the motions hearing on the motion to suppress, Simmers testified that the detective told him he had a good chance at getting probation. The detective testified, both at the hearing and at trial, that he only told Simmers that probation is always a possibility. The district court then found that the detective told Simmers that he simply had a chance at probation which, the court noted, is true under the law in Wyoming. The district court also found that the detective did not mislead Simmers. "[R]esolution of conflicting evidence is within the province of the [district] court, and its findings must be given great weight when considered in light of its opportunity to hear and observe the witnesses." *Madrid v. State*, 910 P.2d 1340, 1344 (Wyo.1996) (citations omitted). Considering the totality of the circumstances in this case, the district court correctly determined that Simmers' confession was voluntary.

Simmers' assertion that his statements to the detective concerning SS and AB should have been suppressed because the detective failed to re-advise him of his rights are also without merit. Simmers presents no pertinent legal authority concerning the need to re-advise a suspect of Miranda rights before pursuing further information regarding other similar criminal offenses in the same interview. "We have made it clear cogent argument or authority is essential to appellate review." *Farbotnik v. State*, 850 P.2d 594, 606 (Wyo.1993).

■■■■ Simmers also argues that his statement, "Why not? I'm guilty of the charges I was brought in on," to the deputy in the detention facility during the booking

process was improperly admitted into evidence because it was involuntary. Simmers claims he made the statement during an unlawful custodial interrogation because he was not properly advised of his rights. The booking process is obviously done while the defendant is in custody, that is not disputed. However, "interrogation" is defined as "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Wells v. State*, 846 P.2d 589, 593 (Wyo.1992) (citing *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980) (emphasis omitted)). "A statement that is not the product of interrogation or compulsion attributable to authorities or some other improper action is voluntary and admissible." *Ramos v. State*, 806 P.2d 822, 828 (Wyo.1991) (quoting *Griffin v. State*, 749 P.2d 246, 254 (Wyo.1988)).

■ At trial the deputy testified that he was concerned about Simmers because Simmers told him he was contemplating suicide. The deputy explained that he told Simmers that he had a lot to lose and nothing to gain if he was going to hurt himself and that he hadn't even been proven guilty of the charges, so he should relax and calm down. At that point Simmers made the statement, "Why not? I'm guilty of the charges I was brought in on." The deputy immediately told Simmers not to talk anymore because he would have to testify against him in court about anything Simmers said.

Simmers' statement to the deputy was a spontaneous remark made during an attempt to calm Simmers down during the intake process. The deputy's actions and questions were not directed toward obtaining evidence against Simmers and were not reasonably likely to elicit an incriminating response. The statement was given voluntarily. The district court properly admitted the incriminating statement made by Simmers during the intake process.

*Hearsay Testimony*

■ Simmers claims the trial court improperly admitted the content of statements made by the victim, SS, through the hearsay testimony of a social worker. Rul-

ings on the admissibility of evidence are within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of a clear abuse of discretion. *Vit v. State*, 909 P.2d 953, 956 (Wyo.1996). We will not overturn a trial court's discretionary decision unless the court acted in a manner exceeding the bounds of reason and could not rationally conclude as it did. *Id.* at 956–57. "[D]ecisions of the trial court with respect to the admissibility of evidence are entitled to considerable deference and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be reversed on appeal." *Id.* (quoting *Tennant v. State*, 786 P.2d 339, 343 (Wyo.1990) (citations omitted)).

When the trial court determined SS was not competent to testify at trial, the State asked that the social worker who counseled all three victims be permitted to testify regarding statements made to her by SS. After hearing arguments from both parties, the trial court determined the social worker's testimony was admissible pursuant to our ruling in *Betzle v. State*, 847 P.2d 1010 (Wyo. 1993), and Wyoming Rule of Evidence 803(4).

■ Hearsay is ordinarily inadmissible; however, it may be admitted if it falls within one of the exceptions to the hearsay rule. *Betzle*, 847 P.2d at 1015. Wyoming Rule of Evidence 803(4) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(4) *Statements for purposes of medical diagnosis or treatment.* —Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment[.]

We have held that statements made by an abused child to a medical professional or professional counselor may be admitted into evidence provided the expert's testimony provides the proper foundation—that the victim's statements were consistent with the

purposes for which the witness became involved with the victim, and the witness relied on the statements in connection with diagnosis and treatment of the victim. *Betzle,* 847 P.2d at 1017; *Owen v. State,* 902 P.2d 190, 196 (Wyo.1995). This test was adopted "to assure such hearsay testimony conforms with the policy of the rule before the testimony is admitted." *Betzle,* 847 P.2d at 1017.

The State properly laid its foundation prior to the hearsay testimony in question. The social worker was SS's counselor, and she testified that the statements were made for the purpose of diagnosis and treatment. The statements described the inception and general character of the external source of SS's symptoms, were reasonably pertinent to her diagnosis and treatment, and were consistent with the purpose for which the witness became involved with the victim. Further, the social worker relied upon the statements for diagnosis and treatment. Therefore, in accordance with our previous cases, the trial court properly admitted the social worker's testimony concerning statements SS made to her during treatment. *See e.g., Owen,* 902 P.2d at 195–96; *Betzle,* 847 P.2d at 1017.

*Failure to Sever Trial*

 Simmers claims he was prejudiced by the trial court's failure to sever the three criminal actions against him because of the cumulative nature of the evidence and the confusion caused by the jury's inability to separate the evidence in reaching a verdict with respect to each child. The denial of a motion for severance is within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of that discretion. *Bishop v. State,* 687 P.2d 242, 247 (Wyo.1984), *cert. denied,* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985). Joinder is proper absent compelling reasons for severance because "[j]oint trials serve the public interest by expediting the administration of justice, reducing docket congestion, conserving judicial time as well as that of jurors along with avoiding the recall of witnesses to duplicate their performances." *Id.* Any prejudice caused by joinder must be weighed against the economy in judicial administration provided by joinder. *Dorador v.*

*State,* 768 P.2d 1049, 1052 (Wyo.1989) (citing *Lee v. State,* 653 P.2d 1388, 1390 (Wyo.1982)).

 The rules pertaining to joinder and severance of criminal cases are contained in Rules 8(a), 13 and 14 of the Wyoming Rules of Criminal Procedure. Rule 13 conditions the joinder of offenses charged in separate informations on the same circumstances which would permit joinder of counts within a single information. WYO. R.CRIM. P. 13. That is, if the offenses are of the same or similar character or constitute part of a common scheme or plan, the offenses may be tried together as if charged in a single information. WYO. R.CRIM. P. 8(a). Rule 14 allows the court to order separate trials if either party is prejudiced by a joinder of offenses. WYO. R.CRIM. P. 14.

When the district court denied Simmers' motion for severance, it found:

> I think that the evidence in this case will show that the offenses charged, certainly they are [of] the same or similar character. They are based on the same transaction in the sense that we have a day care center and access, matters of that nature, or are based upon two or more actions or transactions connected together or constituting a part of a common scheme or plan.

> I am satisfied that the three cases were properly joined, so I am going to deny the motion to sever.

We cannot say the trial court abused its discretion in so finding. The testimony concerning the other victims would have been admissible in separate trials as 404(b) evidence to show motive or a common scheme or plan. Simmers has failed to provide us with a factual basis for his claim that the jury was confused by joinder of the charges. Simmers was not prejudiced by joinder of the trials for the three criminal actions against him.

*Victims' Competency to Testify*

 Simmers claims two of the victims, AB and AJ, were not competent to testify and the district court erred in allowing them to testify. Determining whether a child is competent to testify is committed to the discretion of the trial court, and that

determination will not be disturbed on appeal unless it is shown to be clearly erroneous. *Trujillo v. State,* 880 P.2d 575, 579 (Wyo. 1994). The trial court's findings are given considerable deference since the court is in a better position to observe and judge the demeanor of the witness. *Baum v. State,* 745 P.2d 877, 880 (Wyo.1987).

The Wyoming Rules of Evidence provide that "[e]very person is competent to be a witness except as otherwise provided in these rules." WYO. R. EVID. 601. A person is generally competent to testify if he can understand, receive, remember and narrate impressions and is sensible to the obligations of the oath taken before testifying. *Larsen v. State,* 686 P.2d 583, 585 (Wyo.1984). "Intelligence, not age, is the guiding criteria in determining the competency of a witness." *Baum,* 745 P.2d at 879.

We have adopted a five-part test for determining the competency of a child witness:

(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*Larsen v. State,* 686 P.2d at 585.

Simmers claims that AJ's testimony was not an independent recollection of the sexual abuse because AJ sat on his mother's lap while testifying. However, Simmers does not claim, nor does the record show, that AJ's mother helped him with his testimony in any way or that AJ would have been unable to testify in the absence of the comfort and familiarity of his mother's lap. The district court did not abuse its discretion when it found AB and AJ competent to testify at trial.

*Sufficiency of the Evidence*

Finally, Simmers contends the State lacked sufficient evidence, in the absence of his confessions, to convict him of the twelve counts of second degree sexual assault. Independent proof of the *corpus delicti* must exist apart from a defendant's extra-judicial confession in order to prove commission of a crime. *Betzle v. State,* 847 P.2d at 1021–22. However, that corroborating evidence need only consist of substantial evidence that the offense has been committed, so that the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty of the crime charged. *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164–65, 99 L.Ed. 101 (1954); *United States v. Clark,* 57 F.3d 973, 976 (10th Cir.1995); *Evans v. United States,* 122 F.2d 461, 465 (10th Cir.1941), *cert. denied,* 314 U.S. 698, 62 S.Ct. 478, 86 L.Ed. 558 (1942).

[C]orroborating evidence is adequate if it "supports the essential facts admitted sufficiently to justify a jury inference of the truth" of the confession. *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954). The quantity and type of independent corroborating evidence depends upon the facts of each case. *Id.* However, circumstantial evidence can be used to corroborate a confession.

*Clark,* 57 F.3d at 976.

In the case at bar, Simmers admitted to having all three victims suck his penis while they were attending his mother's day care. At trial AB and AJ testified to sexual contact between themselves and Simmers. Although AB never acknowledged placing her mouth on Simmers' penis, her testimony established that sexual contact occurred with Simmers. That testimony sufficiently corroborated Simmers' confession. AJ also testified that Simmers made him, SS and another child put their mouths on Simmers' penis at the babysitter's house. The social worker testified that SS told her that Simmers made SS suck his penis. Taken as a whole, the evidence in the record established, for purposes of corroboration, the commission of the crimes for which Simmers was convicted. *See Betzle,* 847 P.2d at 1021–22.

## CONCLUSION

The district court properly admitted the two inculpatory statements Simmers made to

law enforcement officers. The charges were properly joined for one trial and the district court did not abuse its discretion in refusing to sever the trials. The district court did not abuse its discretion when it allowed two of the child victims and the social worker to testify against Simmers. The jury was presented with sufficient corroborating evidence to convict Simmers of twelve counts of second degree sexual assault. We affirm.