# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 4

OCTOBER TERM, A.D. 2022

January 23, 2023

TERRILL KIM MORRIS,

Appellant
(Defendant),

v.

S-22-0096

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*
Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Francis H. McVay, Senior Assistant Appellate Counsel. Argument by Mr. McVay.

*Representing Appellee:*
Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Rachel Edelman, Student Intern. Argument by Ms. Edelman.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Following a jury trial, Terrill Morris was convicted of second-degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-315(a)(ii) and third-degree sexual abuse of a minor under § 6-2-316(a)(iv).  Mr. Morris challenges the sufficiency of the evidence to support his conviction for second-degree sexual abuse of a minor, focusing on the intent requirement for that offense.  He does not challenge his conviction for third-degree sexual abuse of a minor.  We affirm.

## *ISSUE*

[¶2]    We restate the issue:

> Was there sufficient evidence of intent to support Mr. Morris'
> conviction for second-degree sexual abuse of a minor under
> Wyo. Stat. Ann. § 6-2-315(a)(ii)?

## *FACTS*

[¶3]    In March 2020, Detective Julianne Witham of the Gillette Police Department began investigating Mr. Morris for sexually abusing his elementary school-aged nephew, who is not the victim in this case.  The investigation led to the charges against Mr. Morris involving DA, the victim in this case.

[¶4]    Through her investigation, Detective Witham learned Mr. Morris was a registered sex offender who moved to Wyoming in January 2019, after spending 10 years in prison and 22 years in civil confinement for sexually abusing several young boys in Washington State.  In September 2020, Detective Witham spoke with employees at Rawhide Elementary School, where Mr. Morris' nephew attended school, and learned Mr. Morris had befriended Maya Stupar, whose son DA also attended school there.  Teacher's assistant Carol Roth recounted seeing Mr. Morris and DA in the medicine aisle of Walmart on August 28, 2020.  Mr. Morris told Ms. Roth he was purchasing ointment cream for DA because DA's bottom was sore from sitting so much at school and not wiping well.

[¶5]    Detective Witham met with Ms. Stupar and DA's father, Cameron Garcia, later that month.  Ms. Stupar appeared nervous about speaking to the detective and did not disclose any concerns about Mr. Morris at that time.  Consequently, Detective Witham wrote a report stating "[n]o criminal activity has been reported," and she closed the case "as unfounded at this time[.]"  In January 2021, Ms. Stupar contacted Detective Witham and disclosed her concerns about Mr. Morris' relationship with DA.

[¶6]    Later that month, the State charged Mr. Morris with two counts of second-degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-315(a)(ii) (Counts I and II) and two

1

counts of third-degree sexual abuse of a minor under § 6-2-316(a)(iv) (Counts III and IV).[1] It alleged Mr. Morris engaged in sexual contact with DA by "touching [DA]'s penis while [DA] urinated" between July 1 and August 4, 2020 (Count I); engaged in sexual contact with DA "while applying cream to [DA's] buttocks/anus" on August 28, 2020 (Count II); took immodest, immoral, or indecent liberties with DA by "taking a shower with [DA] at the Quality Inn" between July 1 and August 4, 2020 (Count III); and took immodest, immoral, or indecent liberties with DA by "taking a shower with [DA]" at DA's family's apartment between August 1 and September 30, 2020 (Count IV).

[¶7]    Mr. Morris pleaded not guilty to the charges.  Prior to trial, the State provided notice it did not intend to call DA as a witness.  The district court ruled the State could introduce certain evidence under W.R.E. 404(b).  More specifically, the State could introduce Mr. Morris' admissions about his attraction to children, *see infra* ¶¶ 20–22, to prove his intent and plan when he touched DA.

[¶8]    On the first day of trial in November 2021, the district court granted the State's motion to dismiss Count I with prejudice, and renumbered Counts II, III, and IV as Counts I, II, and III, respectively.  The State called five witnesses: Ms. Stupar, Mr. Garcia, Detective Witham, Ms. Roth, and the Rawhide Elementary School principal.  It also introduced four exhibits, as discussed in more detail in the context of Detective Witham's testimony, *see infra* ¶¶ 17–18, 20–22.

[¶9]    Ms. Stupar testified she met Mr. Morris while picking DA up from kindergarten in August 2019.  They exchanged phone numbers, met for a playdate with her children and Mr. Morris' nephews in the park in September 2019, and then lost touch until June 2020, when Ms. Stupar ran into Mr. Morris at the Flying J where he worked.  They struck up a friendship and Mr. Morris spent a lot of time with Ms. Stupar and her family that summer.  Ms. Stupar described Mr. Morris' relationship with DA as "really close" and "really affectionate[.]"

[¶10]   In July 2020, Ms. Stupar and her family temporarily lived at the Quality Inn.  One day when Mr. Morris was visiting her and the children at the motel she asked him to watch DA while she went to a gas station with her daughter.  When she returned 30 minutes later,

---

[1] Wyo. Stat. Ann. § 6-2-315(a)(ii) (LexisNexis 2021) provides: "Except under circumstance constituting sexual abuse of a minor in the first degree as defined by W.S. 6-2-314, an actor commits the crime of sexual abuse of a minor in the second degree if: . . . (ii) Being sixteen (16) years of age or older, the actor engages in sexual contact of a victim who is less than thirteen (13) years of age[.]"

Wyo. Stat. Ann. § 6-2-316(a)(iv) (LexisNexis 2021) provides: "Except under circumstance constituting sexual abuse of a minor in the first or second degree as defined by W.S. 6-2-314 and 6-2-315, an actor commits the crime of sexual abuse of a minor in the third degree if: . . . (iv) Being seventeen (17) years of age or older, the actor knowingly takes immodest, immoral or indecent liberties with a victim who is less than seventeen (17) years of age and the victim is at least four (4) years younger than the actor."

Mr. Morris and DA were soaking wet and wearing only their underwear. The bathroom was messy, there was water on the floor, and there was soap and water in the bathtub. Ms. Stupar felt uncomfortable but did not say anything to Mr. Morris.

[¶11]  On August 11, Ms. Stupar and her family moved into an apartment on Vivian Street. Mr. Morris visited Ms. Stupar at the apartment often and she considered him a friend. One day, Mr. Morris told Ms. Stupar he wanted to go to Walmart but did not tell her why. Ms. Stupar and DA accompanied Mr. Morris to Walmart while Mr. Garcia and their daughter remained home. Ms. Stupar waited in the car while Mr. Morris and DA went into Walmart. She did not know what he bought at that time.

[¶12]  On returning to the family's apartment, Ms. Stupar watched television with Mr. Garcia and their daughter. At some point later that day, Mr. Morris "told [Ms. Stupar] he put cream on [DA's] bottom because [DA] had a rash on his butt." Ms. Stupar observed that "[DA] looked so scared, and he was crying" when Mr. Morris told her this. Mr. Morris did not have permission to apply cream to DA's bottom and Ms. Stupar felt uncomfortable that he had done so. After Mr. Morris left, Ms. Stupar checked her son's bottom and did not see any rash. "All [she] saw was the cream on his bottom." It did not appear to her that DA needed to have ointment applied.

[¶13]  In September, Ms. Stupar was cooking and cleaning at the Vivian Street apartment while Mr. Morris and DA watched movies in the living room. Later, Ms. Stupar noticed Mr. Morris and DA walking in the hallway. They were soaking wet and wearing only their underwear. Mr. Morris told Ms. Stupar, "I took a shower with [DA]." Ms. Stupar did not respond because she was scared of Mr. Morris.

[¶14]  Ms. Stupar eventually asked Mr. Morris to stop coming to her home but he did not listen and continued visiting. She delayed telling Detective Witham about these events because she was scared of Mr. Morris.

[¶15]  Ms. Roth testified about her encounter with Mr. Morris and DA at Walmart on August 28, 2020. In the parking lot, Ms. Roth observed DA getting out of a car with Mr. Morris; Ms. Stupar remained in the car. Ms. Roth approached DA and said hi to him. After Ms. Roth said hi to DA, "Mr. Morris said, 'Oh, you know him?' And [she] said, 'Yes, from Rawhide [Elementary School].'" Ms. Roth then ran into Mr. Morris and DA in the medicine aisle of the store. Ms. Stupar was not with them. Mr. Morris approached Ms. Roth and "said [DA] has a rash on his butt from not wiping correctly[.]" He asked her whether the ointment he had in his hand would work for DA. Ms. Roth looked at the ointment and told him it looked like it would work.

[¶16]  Detective Witham testified about her interview with Ms. Stupar and Mr. Garcia on January 15, 2021. During the interview, Ms. Stupar expressed concern about Mr. Morris' relationship with DA, who was seven years old at the time. Ms. Stupar discussed a couple

3

different incidents, including the incident in which Mr. Morris applied cream to DA. Detective Witham recalled Ms. Stupar stated they were at her apartment on Vivian Street when Mr. Morris came out of the bathroom, indicated DA had a rash on his bottom, and confirmed he put cream on DA. Ms. Stupar stated she had not given Mr. Morris permission to apply the cream. Ms. Stupar also advised that Mr. Morris showered with DA on two occasions that summer.

[¶17] Detective Witham testified that she spoke to DA's teachers and they told her DA had not complained about a rash on his bottom at school. In addition, Detective Witham obtained surveillance video from Walmart on August 28, 2020. The State played several of the surveillance video clips for the jury (State's Exhibit 3). The video clips showed Mr. Morris walking through Walmart with DA on his shoulders, going to the medicine aisle, and then purchasing the cream. The State also introduced a still shot from the surveillance video showing Mr. Morris standing in the medicine aisle with DA on his shoulders (State's Exhibit 4).

[¶18] Detective Witham testified about her interview with Mr. Morris on January 24, 2021, and then the State played a series of video clips from the interview (State's Exhibit 1). In the first clip, Mr. Morris confirmed he and Ms. Stupar struck up a friendship after she came into the Flying J, but he denied spending much time with her family because he was busy working. In the second clip, Mr. Morris addressed the August 28, 2020 cream incident. Mr. Morris claimed he went into Walmart with Ms. Stupar and both her children because DA had complained about a rash. When Detective Witham informed him video surveillance showed just him and DA in the store, he stated he did not recall this. Mr. Morris claimed that, when he applied the cream to DA's bottom, Mr. Morris and DA were in the bathroom and Ms. Stupar was standing at the bathroom door. Mr. Morris suggested he applied the cream because Ms. Stupar did not want to do so herself. He did not remember if DA's bottom looked inflamed. In the third clip, Mr. Morris denied showering with DA at the Quality Inn. In the fourth clip, Mr. Morris described applying the cream to DA—DA "bent over" and Mr. Morris "put some cream in there." He also gestured how he applied the cream with his finger. In the final clip, Mr. Morris denied being alone with DA and suggested Walmart did not count.

[¶19] Before Detective Witham began discussing a different interview with Mr. Morris, the court provided the jury the following limiting instruction at defense counsel's request:

> Ladies and gentlemen of the jury, I'm going to give you a limiting instruction. Ladies and gentlemen, you are about to hear evidence that the defendant previously acted upon an attraction to a child before the acts charged in this case. You might find this evidence helpful as you decide intent in this matter. However, this evidence is not admitted to prove the character of the defendant or to show that he acted in a manner

4

consistent with a presumed character trait. Remember, that the mere fact the defendant may have previously acted on a prior occasion is not evidence that he committed such an act in this case. The defendant is on trial for the crimes charged and for those crimes alone. You may not convict a person simply because you believe he may have committed some other act at another time.

[¶20]  Detective Witham testified that, during the interview, "Mr. Morris admitted to being attracted to children" and "further admitted that because of that attraction to children that he had previously engaged in sexual activity with a seven-year-old." The State then played two short video clips from the interview (State's Exhibit 2).

[¶21]  In the first video clip, Mr. Morris stated, "Time has gone by. I don't just let the kids grab me or anything like that. That's not what I'm into. That's not what I want. Not now." Detective Witham asked him how this had changed, and he responded that it had changed by him saying no, "there is a fine line with children and me." The detective asked, "So you know that [] the touching is inappropriate?" and he answered, "Yeah." Detective Witham stated, "But there is no way that you are not attracted to them. I mean that doesn't change. Just because you go to counseling doesn't change who you are attracted to." Mr. Morris responded that it was about "[t]aking charge of who I am." Detective Witham asked, "So you have that attraction but you are saying that you have enough control to keep that in check?" and Mr. Morris answered, "Right." He added that he did "not go around trying to stroke out kids." And he stated, "You know how people are with these type of problems. Just because I'm attracted doesn't mean I go for it. I don't need it."

[¶22]  In the second video clip Mr. Morris stated: "I know I wasn't going to do anything. I know I didn't want to do anything. And, again, with my paperwork, five years old is not part of my victim. The youngest it was was seven and the reason why is because it was an opportunity."

[¶23]  At the close of the State's evidence, the district court denied Mr. Morris' motion for judgment of acquittal on Count I, second-degree sexual abuse of a minor. Mr. Morris exercised his constitutional right not to testify and declined to call any witnesses or produce any evidence. The jury found Mr. Morris guilty of Counts I and II, but not guilty of Count III. Mr. Morris was convicted of Counts I and II and acquitted of Count III accordingly.

[¶24]  Finding he qualified for a sentencing enhancement based on his prior conviction for first-degree statutory rape in Washington State, the district court sentenced Mr. Morris to life imprisonment without parole on Count I, second-degree sexual abuse of a minor. It imposed a consecutive sentence of eight to fifteen years on Count II, third degree sexual abuse of a minor. This timely appeal followed.

5

[¶25]  Mr. Morris asserts the standard of review for denial of a motion for judgment of acquittal is similar to our standard of review for sufficiency of the evidence.  However, we have stated many times that the standards of review are the same "because both challenge the sufficiency of the evidence."  *Bezold v. State*, 2021 WY 124, ¶ 11, 498 P.3d 73, 76 (Wyo. 2021) (quoting *Childers v. State*, 2021 WY 93, ¶ 19, 493 P.3d 168, 171 (Wyo. 2021)).  *See also Mackley v. State*, 2021 WY 33, ¶ 24, 481 P.3d 639, 645 (Wyo. 2021); *Armajo v. State*, 2020 WY 153, ¶ 20, 478 P.3d 184, 191 (Wyo. 2020); *Foltz v. State*, 2017 WY 155, ¶ 10, 407 P.3d 398, 401 (Wyo. 2017).

[¶26]  When reviewing for the sufficiency of the evidence,

> [w]e do not reweigh the evidence or reexamine the credibility of witnesses, but examine the evidence in the light most favorable to the State.  We examine and accept as true the evidence of the prosecution together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict therewith.  In other words, we simply determine whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented.

*Bezold*, ¶ 11, 498 P.3d at 76 (quoting *Childers*, ¶ 19, 493 P.3d at 171).

*DISCUSSION*

[¶27]  *Corpus delicti* means "the body of the crime" and "embraces the fact that a crime has been committed by someone—i.e., that somebody did the required act or omission with the required mental fault, under the required (if any) attendant circumstances, and producing the required (if any) harmful consequence[.]"  Wayne R. LaFave, 1 Subst. Crim. L. § 1.4(b) (3d ed.), Westlaw (Oct. 2022 Update) (footnote omitted).  *Corpus delicti* is primarily discussed in conjunction with this rule intended to reduce the possibility that a person will be convicted for a crime that never occurred: the State cannot rely solely on a defendant's out of court confession or admission to support a conviction.  *Id.  See also Dennis v. State*, 2013 WY 67, ¶ 24, 302 P.3d 890, 895 (Wyo. 2013); 1 McCormick on Evid. § 145 (8th ed.), Westlaw (Jul. 2022 Update).  In other words, the defendant's out of court confession or admission must be corroborated by some other evidence that a crime occurred.  Wayne R. LaFave, 1 Subst. Crim. L. § 1.4(b) (3d ed.), Westlaw (Oct. 2022 Update); *Dennis*, ¶ 24, 302 P.3d at 895 (citing *Mersereau v. State*, 2012 WY 125, ¶ 65, 286 P.3d 97, 121 (Wyo. 2012)).  *See also Jones v. State*, 2010 WY 44, ¶ 11, 228 P.3d 867, 870 (Wyo. 2010); *Simmers v. State*, 943 P.2d 1189, 1199 (Wyo. 1997); *Kolb v. State*, 930 P.2d

1238, 1248 (Wyo. 1996); *Betzle v. State*, 847 P.2d 1010, 1021–22 (Wyo. 1993). However, the "corroborating evidence need only consist of substantial evidence that the offense has been committed, so that the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty of the crime charged." *Dennis*, ¶ 24, 302 P.3d at 895 (citing *Simmers*, 943 P.2d at 1199). Because every case is unique, "the quantity and type of independent corroborating evidence depends upon the facts of each case." *Id.* (citing *Simmers*, 943 P.2d at 1199). The corroborating evidence may be direct or circumstantial. *Id.* (citing *Simmers*, 943 P.2d at 1199).[2]

[¶28] Here, we focus only on Count I, second-degree sexual abuse of a minor, because that is the only charge Mr. Morris argues runs afoul of the *corpus delicti* rule. To place his argument in better context, we first review the jury instructions related to Count I. The district court instructed the jury that, to convict Mr. Morris of second-degree sexual abuse of a minor, the State had to prove beyond a reasonable doubt he "[e]ngaged in sexual contact with the victim to wit: by applying cream to [DA]'s anus[.]" *See* Wyo. Stat. Ann. § 6-2-315(a)(ii) (LexisNexis 2021). It further instructed the jury that "the term 'sexual contact' means touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the defendant, or of the defendant's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or defendant's intimate parts[.]" Wyo. Stat. Ann. § 6-2-301(a)(vi) (LexisNexis 2021).

[¶29] Mr. Morris contends his conviction for Count I runs afoul of the *corpus delicti* rule because the only evidence designated to prove his intent—i.e., that he touched DA "with the intention of sexual arousal, gratification or abuse"—was State's Exhibit 2, his extrajudicial admissions about his attraction to children and prior act with a seven-year-old.[3] He asserts his case is similar to *Mersereau v. State* in that there is no evidence, direct or circumstantial, to corroborate that he had the requisite intent other than his own

---

[2] "Almost all American jurisdictions have some form of a rule mandating that at least some out-of-court statements by the accused be corroborated if the prosecution wants to introduce them in a criminal trial." 1 McCormick on Evid. § 145 (8th ed.), Westlaw (Jul. 2022 Update) (footnote omitted). "There are several quite different formulations of the requirement, some of which are variations of what is often called the requirement of independent proof of the corpus delicti." *Id.* "A more flexible approach applied in the federal courts and some state courts calls for independent evidence of a confession's truthfulness." *Id.* In 2013, the Colorado Supreme Court "abandon[ed] the corpus delicti rule" and, "[i]n its place, [] articulate[d] the trustworthiness standard, which requires the prosecution to present evidence that proves that a confession is trustworthy or reliable." *People v. LaRosa*, 2013 CO 2, ¶ 3, 293 P.3d 567, 570. Neither party advocates for adoption of a different standard.

[3] In his brief, Mr. Morris only challenges the sufficiency of the evidence supporting the intent requirement for sexual contact. He does not challenge the sufficiency of the evidence supporting that he touched DA's anus. In fact, he specifically states it was "not enough for the State to establish that Mr. Morris touched D.A.'s intimate parts." For the first time at oral argument, he asserted the evidence was insufficient for the jury to conclude he touched DA's intimate parts (i.e., anus). We will not review that issue under such circumstances. *See Rodriguez v. State*, 2019 WY 25, ¶ 38 n.7, 435 P.3d 399, 411 n.7 (Wyo. 2019) (declining to review an issue the appellant did not brief and instead raised for the first time during oral argument).

extrajudicial confession or admission of sexual attraction to children, and of a prior sexual relationship with a seven-year-old. The State does not dispute that the *corpus delicti* rule applies to Mr. Morris' admission, but contends there was sufficient evidence to corroborate his admission and convict him of the offense.

[¶30]  This case is easily distinguished from *Mersereau v. State*, where we reversed the appellant's eight convictions for second-degree sexual abuse of a minor because the only evidence supporting those charges at trial were the defendant's own statements during an interview with police about a different allegation. *Cf. Mersereau*, ¶¶ 3, 63–66, 286 P.3d at 103, 120–22. In contrast, Mr. Morris' admissions about his attraction to children and prior conduct with a seven-year-old were not the only evidence supporting the second-degree sexual abuse of a minor charge. The State presented ample corroborating evidence at trial from Ms. Stupar, Detective Witham, Ms. Roth, and through the remaining exhibits, for the jury to find Mr. Morris guilty beyond a reasonable doubt of that offense. Evaluating the sufficiency of the State's evidence to support the intent element demonstrates why.

[¶31]  With respect to the "sexual contact" intent requirement, we have noted that, "[b]ecause direct evidence of intent is rare, and circumstantial evidence is most often the only proof available, . . . intent may be proven by circumstantial evidence alone." *Armajo*, ¶ 28, 478 P.3d at 192 (quoting *Jones v. State*, 2017 WY 44, ¶ 34, 393 P.3d 1257, 1265 (Wyo. 2017)). In that regard, we look to a defendant's "conduct and [the] circumstances of physical contact." *Id.* ¶ 28, 478 P.3d at 192–93 (quoting *Trumbull v. State*, 2009 WY 103, ¶ 13, 214 P.3d 978, 981 (Wyo. 2009)). "Our precedent is instructive on the types of conduct and circumstances sufficient to establish the defendant's intent." *Id.* ¶ 29, 478 P.3d at 193. For example,

> [i]n *Trumbull*, we said that "[i]ntent of sexual gratification may be inferred from touching the complainant on more than one occasion, and committing the act after no adults were remaining in the house." *Id.* (citation omitted). In *Jones*, the defendant's "effort to mask his actions by placing a blanket over himself and the girls, his repeated touchings of the girls in virtually identical ways, and his instructions to keep the touchings secret provided sufficient circumstantial evidence" of intent. *Jones v. State*, 2019 WY 45, ¶ 30, 439 P.3d 753, 763 (Wyo. 2019). In *Martinez*, evidence that the defendant engaged in the touching while alone with the victim in the bathroom and that she told the victim to keep the touching a secret contributed to our conclusion that the evidence was sufficient to establish intent. *Martinez v. State*, 2018 WY 147, ¶ 27, 432 P.3d 493, 500 (Wyo. 2018).

*Id.*

[¶32]  Each case, however, must be evaluated on its own unique facts and circumstances. *See id.* ¶ 28, 478 P.3d at 192–93.  Thus, conduct and circumstances that might support the intent requirement are not limited to those we have described to date, as Mr. Morris suggests.   Relevant circumstances may also include "the relationship between the defendant and the victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there was a legitimate, nonsexual purpose for the contact; where and when the contact took place; and the conduct of the defendant and victim before and after the contact." *State v. Howard*, 825 N.W.2d 32, 44 (Iowa 2012) (citation omitted).  *See also* Vol. no. 2 Paul DerOhannesian II, *Sexual Assault Trials* § 16:22 (Mathew Bender, Rev. Ed.) (collecting cases on intent).

[¶33]  Applying our sufficiency of the evidence standard of review, we conclude the jury could reasonably find the State proved beyond a reasonable doubt that Mr. Morris had the requisite intent when he touched DA.  First, the jury could reasonably conclude there was no nonsexual purpose for Mr. Morris to apply the cream to DA.  *See Howard*, 825 N.W.2d at 44.  The evidence showed Morris claimed he purchased and applied the cream because DA had a rash.  However, DA had not complained about a rash on his bottom at school.  More importantly, Ms. Stupar testified she did not see any rash on DA's bottom when she checked it after Mr. Morris applied the cream.

[¶34]  The jury could also reasonably infer intent from the evidence that Mr. Morris, a mere family friend, applied the cream while alone in the bathroom with DA and without permission from either parent to do so.  *Cf. Martinez*, ¶ 27, 432 P.3d at 500 (noting, among other facts and circumstances, the appellant and victim were alone in the bathroom when the touching occurred).  And, immediately after the contact occurred, DA appeared scared and upset.  *See Howard*, 825 N.W.2d at 44 (noting the relevance of the victim's conduct to the intent inquiry).  Moreover, the jury could reasonably conclude that, in his January 2021 interview with Detective Witham, Mr. Morris lied about the most damning aspects of the cream incident in an effort to minimize his conduct, claiming Ms. Stupar went into Walmart with him to purchase the cream and that she was in the bathroom when he applied the cream to DA.  *Cf. State v. Schuler*, 563 S.W.3d 157, 159 (Mo. Ct. App. 2018) (concluding "[t]he evidence, and its reasonable available inferences, warranted the conclusion that Schuler grabbed [the victim's] genitals for the purpose of arousing or gratifying his own sexual desire" where, among other facts, he lied about doing so when confronted).  Finally, as instructed by the district court, the jury could reasonably infer intent from Mr. Morris' statements about his attraction to children.

[¶35] Under the facts and circumstances of this case, which included more than Mr. Morris' admissions about his attraction to children and prior acts, the evidence was sufficient for the jury to infer Mr. Morris had the requisite intent when he applied the cream to DA.

9

## *CONCLUSION*

[¶36]   There was sufficient evidence of intent for the jury to convict Mr. Morris of second-degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-315(a)(ii).  Affirmed.