# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 37

APRIL TERM, A.D. 2023

April 25, 2023

RICKY ALAN DEEPHOUSE,

Appellant
(Defendant),

v.

S-22-0174

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*

*Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Joanne S. Zook, Steiner, Fournier, and Zook, LLC, Cheyenne Wyoming.*

*Representing Appellee:*

*Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Kristine D. Rude, Assistant Attorney General.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Chief Justice.**

[¶1]    Ricky Alan Deephouse was charged with two counts of third-degree sexual abuse of a minor, and a jury convicted him of one count. He challenges the sufficiency of the evidence to support his conviction. We affirm.

## *ISSUE*

[¶2]    The sole issue on appeal is whether the evidence was sufficient to support Mr. Deephouse's conviction.

## *FACTS*

[¶3]    In August 2019, DT reported to law enforcement that her uncle, Mr. Deephouse, had sexually assaulted her multiple times over a period of years. Her recollection of many of the incidents was vague, but she was able to describe two incidents in greater detail, including one that her father witnessed and corroborated. Law enforcement focused its investigation on those two incidents.

[¶4]    In November 2020, the State charged Mr. Deephouse with two counts of third-degree sexual abuse of a minor (referred to herein as Count I and Count II). Count I alleged an act that occurred in the approximate period of November 1, 2017, to December 31, 2017. Count II alleged an earlier act that occurred in the approximate period of August 1, 2016, to October 31, 2017.

[¶5]    At trial DT testified concerning Count II, which was the earlier of the charged incidents, that when she was fifteen years old Mr. Deephouse forced her to have sexual intercourse with him. She had gone to his home to borrow some sugar for her grandmother, who lived next door. She testified:

> Q.    Okay. And take us through what happened when you got there.
>
> A.    Basically, I walked in. I went in, talking for a minute, and – about getting sugar. And he pulls me into the room.
>
> Q.    He pulled you into what room?
>
> A.    Bedroom.
>
> Q.    Describe the bedroom.

1

A.  It was pretty basic. Just had a bed, dresser, and that was about it.

Q.  Okay. And what happened when you got into the bedroom?

A.  I was forced on the bed, held – and held down, forced my pants off, and sexual intercourse.

Q.  How did he force your pants off?

A.  Held me by my hands and pulled them off.

Q.  Did he force full sexual intercourse?

A.  Yes.

Q.  Did you consent to this?

A.  No.

[¶6]  Concerning Count I, the later of the charged incidents, DT testified that in November 2017, she was sixteen and had gone to Mr. Deephouse's home with her father. When DT's father went outside to smoke a cigarette and get his phone, Mr. Deephouse pulled her into a bedroom, forced her onto the bed, removed her pants, and had sexual intercourse with her. She testified her father returned and saw what was happening.

Q.  And how did your dad come into the picture?

A.  He – he was only having a couple of drags of his cigarette, I guess, and he walked in and didn't see us in the living room. So he opened the bedroom door and saw it.

Q.  And what happened when he opened the bedroom door?

A.  He was shocked and stunned. So he just – he froze for a second, shut the door, and – and walked away just to think for a second. He didn't know what to do.

Q.  And did the defendant stop at that point?

A.  Yes.

2

Q. And did he tell you to tell [your dad] that it was consensual?

A. Yes.

Q. Did you do that?

A. Yes.

Q. Okay. And why did you say you had consented?

A. I was afraid.

Q. Did your dad report it at the time?

A. No. I had asked him not to.

Q. Okay. Why did you not want him to report it?

A. I was scared.

[¶7] Brad Tennant, DT's father, testified similarly. He recounted that he had gone to Mr. Deephouse's home with his daughter and stepped outside for a cigarette. When he reentered the home, he did not see DT or Mr. Deephouse so he went looking for them. He looked in a couple of rooms and then opened a closed bedroom door. He testified:

Q. What did you see when you opened the door?

A. I saw [DT] laying on her back on the bed, with her legs dangling off the end of the bed. Her sweatpants were on the floor. Her underwear was on the floor. Her T-shirt was pulled up, exposing her breasts. Rick was standing at the foot of the bed, with his pants down to his ankles, and engaging in sexual intercourse with my daughter.

Q. And what happened after that?

A. I was in shock and quite didn't know what to do. But Rick jumped up and started pulling his pants up. So I kind of stepped out, with the door open, waiting for them to come out into the living room.

3

Q. Did you talk to him about it?

A. Yes. Rick asked me, Do you want to talk about it? Do you want to talk about it? Kind of a – I didn't really know what to say. He said that – that it was consensual. I told him it didn't matter if it was consensual because [DT] is a minor and he's her uncle.

[¶8] Mr. Tennant testified he did not report the incident at that time because he was trying to protect DT from "further embarrassment, possibly trauma, having to tell what happened." The State also presented the testimony of Dr. Matt Gray, a clinical psychologist and professor of clinical psychology who specializes in trauma. He testified to reasons victims of sexual assault, especially children, may be reluctant to disclose incidents of sexual assault. He also testified that it is common for a victim of sexual assault, especially teenagers, to disclose to friends and then recant when questioned by authorities. He explained why victims who have been subjected to multiple incidents of sexual assault have difficulty differentiating between them and remembering specific dates and time frames of the assaults. And he testified that it is common for a non-offending family member with knowledge of abuse to be reluctant to report the abuse and possible reasons for that reluctance.

[¶9] The jury convicted Mr. Deephouse of Count I, the later incident witnessed by DT's father, and acquitted him of Count II, the earlier incident. The district court entered judgment and sentenced him to a prison term of four to eight years. Mr. Deephouse timely appealed.

## STANDARD OF REVIEW

[¶10] In reviewing for sufficiency of the evidence to support a conviction,

> we do not reweigh the evidence or reexamine the credibility of witnesses, but examine the evidence in the light most favorable to the State. We examine and accept as true the evidence of the prosecution together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict therewith. In other words, we simply determine whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented.

*Morris v. State,* 2023 WY 4, ¶ 26, 523 P.3d 293, 298 (Wyo. 2023) (quoting *Bezold v. State,* 2021 WY 124, ¶ 11, 498 P.3d 73, 76 (Wyo. 2021)).

4

## DISCUSSION

[¶11]  To prove Mr. Deephouse was guilty of sexual abuse of a minor in the third degree as alleged in Count I, the State had to prove:

1.      On or about November 1, 2017 through on or about December 31, 2017

2.      In Natrona County, Wyoming

3.      The Defendant, Ricky Deephouse

4.      Who was at least seventeen (17) years of age or older

5.      Knowingly took immodest, immoral, or indecent liberties with [DT]; and

6.      [DT] was less than seventeen (17) years of age at the time of the liberties; and

7.      [DT] was at least four (4) years younger than the Defendant.

[¶12]  In support of his claim the evidence was insufficient to make this showing, Mr. Deephouse first inexplicably points to DT's testimony concerning the incident alleged in Count II, the count for which he was acquitted. He argues DT was only able to identify the date of the incident alleged in Count II, her age on that date, and Mr. Deephouse's age with the aid of the prosecutor's leading questions. He contends such testimony, elicited through leading questions, is insufficient to support a conviction. But again, Mr. Deephouse was acquitted of Count II, so he can claim no prejudice from the line of questioning that he cites. *See Schmuck v. State*, 2017 WY 140, ¶ 41, 406 P.3d 286, 300 (Wyo. 2017) ("There is no outcome more favorable than acquittal, and so the [alleged] error caused no prejudice."); *Bruce v. State,* 2015 WY 46, ¶ 58, 346 P.3d 909, 927 (Wyo. 2015) ("[T]here is simply no basis for this Court to review the denial of a motion for judgment of acquittal where a jury has acquitted the defendant on the charge for which the motion was denied."). We therefore will not consider Mr. Deephouse's claims concerning the testimony supporting Count II.

[¶13]  Mr. Deephouse next asserts that through cross-examination and other evidence, he was able to show inconsistencies between DT's testimony and her prior statements to officials. He contends this shows her testimony lacked credibility and could not support his conviction on Count I.

5

[¶14] This argument ignores our standard of review. We must accept the State's evidence as true, and we do not reweigh the evidence or reexamine witness credibility. *Morris*, 2023 WY 4, ¶ 26, 523 P.3d at 298; *see also Lubing v. Tomlinson*, 2020 WY 105, ¶ 40, 469 P.3d 375, 388 (Wyo. 2020) ("[C]redibility of witnesses is always a question of fact for the trier of fact to determine.") (quoting *Barnes v. State,* 858 P.2d 522, 534 (Wyo. 1993)); *Granzer v. State,* 2010 WY 130, ¶ 8, 239 P.3d 640, 644 (Wyo. 2010) ("The jury has the responsibility to resolve conflicts in the testimony, weigh the evidence and draw reasonable inferences from the facts.") (citing *Sotolongo-Garcia v. State,* 2002 WY 185, ¶ 11, 60 P.3d 687, 689 (Wyo. 2002)). We thus reject Mr. Deephouse's contention that we must disregard DT's testimony in considering the sufficiency of the evidence to support his conviction on Count I.

[¶15] In his final argument, Mr. Deephouse asserts the State was only able to establish the first element of Count I, the date of the offense, through leading questions. Specifically, the prosecutor asked DT, "Then I want to talk to you about a specific incident from November 2017 when your dad witnessed it. Do you know which one I'm talking about?" Similarly, he asked DT's father, "And did you talk to the police about an incident from November 2017 where you witnessed the defendant and [DT]?" Mr. Deephouse again contends evidence elicited through leading questions is insufficient to support a conviction. We disagree.

[¶16] "If evidence comes in without objection . . . the jury may use it for any legitimate purpose[,]" and we may rely on it in determining the sufficiency of the evidence to support a conviction. *Neidlinger v. State,* 2021 WY 39, ¶¶ 31-32, 482 P.3d 337, 346-47 (Wyo. 2021) (citing *Hicks v. State,* 2021 WY 2, ¶ 31, 478 P.3d 652, 661 (Wyo. 2021)). There was no objection to the prosecutor's leading questions concerning the date of the incident alleged in Count I, and the jury could therefore properly rely on the testimony to find the first element of the offense. We likewise may rely on it to conclude the evidence supported the jury's verdict.

[¶17] Mr. Deephouse presents no argument on the other elements of Count I. The testimony of DT and her father, though elicited through leading questions, established the first element, the date of the incident. The evidence was therefore sufficient to support the jury's verdict.

[¶18] Affirmed.